Arthur Henry **CHESTER**, one of the Under-
writers at Lloyd's and Edinburgh Assur-
ance Co., Ltd., as representative defend-
ants with the agreement of all subscrib-
ing insurers, Defendants below, Appellants
and Cross-Appellees,

v.

**ASSINIBOIA CORPORATION,** a corpora-
tion of the State of Delaware, et
al., Plaintiffs below, Appellees,
and

John W. Burgess, Trustee for Mortgagee,
Intervenor below, Appellee and
Cross-Appellant.

Supreme Court of Delaware.

Submitted Oct. 15, 1975.

Decided March 31, 1976.

E. N. Carpenter, II, and Allen M. Terrell, Jr., Richards, Layton & Finger, Wilmington, and William G. Symmers, Symmers, Fish & Warner, New York City, of counsel, for defendants below, appellants and cross-appellees.

Ernest S. Wilson, Jr., Wilson & Russell, Wilmington, for plaintiffs below, appellees.

Richard I. G. Jones and Robert W. Ralston, Prickett, Ward, Burt & Sanders, Wilmington, for intervenor below, appellee and cross-appellant.

Before HERRMANN, C. J., and DUFFY and McNEILLY, JJ.

DUFFY, Justice:

This appeal involves claims resulting from substantial fire damage to a passenger ship, the *S.S. Assiniboia*, while it was docked at Camden, New Jersey. After a trial without jury the Superior Court made findings as to liability, all of which are stated in a full opinion, to which reference is made for a complete statement of facts and contentions. 355 A.2d 373 (1974). Briefly, the Court concluded that defendant underwriters ("Lloyd's") were liable under a policy of fire insurance and plaintiff owners were entitled to counsel fees pursuant to 18 Del.C. § 4102; the Court permitted the intervening Trustee for the mortgagee to be a party to the judgment but denied his claim for counsel fees. Thereafter, a final judgment was entered as to all matters in issue and this appeal followed.

I

In seeking a reversal of the judgment below, Lloyd's make two arguments on the merits. First, they say that the Trial Court mistakenly held that the fire was not caused by an arsonist and, second, that, in any event, plaintiffs' claim is barred by their misrepresentations and concealments.

As to arson, it seems clear that Lloyd's proved that plaintiffs would benefit by a fire and indeed had every reason to want the ship to burn. The Court's opinion itemizes in detail the delinquencies in premium payments, the due date on the mortgage (six days after the fire), the absence of corporate assets, abandonment of development plans, and much more. Strong is the suspicion that plaintiffs had a hand in causing the fire but, under principles long followed in our Courts, suspicion is no substitute for proof. The Trial Judge found that there was simply "no direct evidence of any sort which places plaintiffs or any of their agents or associates in the vicinity of the ship during the hours before the fire." In other words, assuming arson, the evidence does not show that plaintiffs caused it, directly or indirectly. We have carefully reviewed that finding and concluded that the record fully supports it and, so, we have no basis in law or fact for rejecting it. *Levitt v. Bouvier*, Del.Supr., 287 A.2d 671 (1972).

As to the fire, the Trial Court recognized that there is an ambiguity about its origin. Certainly there is "some" evidence that the fire was begun by an arsonist, that is, by a person who purposely started the fire to burn the ship. The Court found, however, that the evidence presented in the case, from which the Judge was obligated to make his findings, whatever they be, fell "far short" of establishing arson. And the burden was on defendants to prove the arson they alleged. *State v. National Automobile Insurance Co.*, Del.Ch., 290 A.2d 675 (1972). The possibility of an accidental start by third persons unconnected in any way to the parties was apparent from the evidence. And while defendants argue that plaintiffs' counsel conceded that the fire was arsonous in origin, our reading of what he said persuades us that he did no more than suggest an hypothesis as to accidental (not arsonous) origin. In brief, we affirm the Trial Court's finding that arson was not proved. *Levitt v. Bouvier* supra.

882

■ Turning to defendants' next argument, they say that under the applicable standards, the utmost good faith and complete disclosure by an applicant is both essential to and required by the law governing contracts of marine insurance. For present purposes, we agree that such is the law applicable to this policy, *Btesh v. Royal Insurance Co.*, S.D.N.Y., 40 F.2d 659 (1930); Gilmore and Black, *The Law of Admiralty*, 62 (2 ed.), which was issued by Lloyd's in England on request made by brokers who were agents of plaintiffs. See *Connecticut Fire Insurance Co. v. Davison Chemical Corporation*, D.Md., 54 F.Supp. 2 (1944); *Anglo-African Merchants, Ltd. and Exmouth Clothing Co., Ltd. v. Bayley*, Q.B., 21 L1.L.Rep. 268 (1969). But the ultimate merit of the good faith disclosure argument is determined by the facts as to what the misrepresentations were and when they were made. *Compare Stipcich v. Metropolitan Life Ins. Co.*, 277 U.S. 311, 48 S.Ct. 512, 72 L.Ed. 895 (1928). And materiality of an alleged concealment to the risk is, of course, a question of fact. *Columbia Insurance Company of Alexandria v. Lawrence*, 35 U.S. 504, 9 L.Ed. 512 (1836); *9 Couch on Insurance* 2d § 38:82.

■ The Trial Judge carefully analyzed defendants' evidence of and arguments as to specific misrepresentations, and we agree with his findings and conclusions. Briefly, it appears to us that the critical date was the time on which the policy was last renewed, that is, August 7, 1969. *Livingston v. The Maryland Insurance Co.*, 10 U.S. 274, 3 L.Ed. 222 (1810). By that date it seems clear that defendants knew that contractually they were dealing only with plaintiff corporation and there is no showing that Lloyd's was then relying on the "backers" of the project. Defendants also knew at that time, as Underwriter Chester testified, that the project was in financial difficulty and the "probability was that it

would not go forward." It also seems clear from Mr. Chester's testimony that the physical aspects of the risk, that is, the ship were the main fact concern of the underwriters and defendants did not show that there was any material misrepresenting as to them. And as to value, the evidence does not establish that the vessel (considering the cash paid at purchase, the value of the mortgage assumed and the expenses of moving from Canada to Camden) was over-insured as a matter of law.

We think it important to note also that the renewal of the policy was processed by a colleague of Mr. Chester and Mr. Chester was unable to say what was or was not told to his colleague at the time of renewal.

In sum, we affirm the findings and conclusions of the Trial Court on the alleged misrepresentation issues.

II

The Trial Court granted plaintiffs' application for counsel fees under 18 Del.C. § 4102.* Lloyd's argues that the statute does not apply because the ship was not located in Delaware and the insurance policy was not made or delivered here.

■■ The Trial Court concluded that the intent of the statute is that reasonable attorney fees should be awarded as part of costs when plaintiff is a Delaware corporation (or resident) and a contract dispute is litigated here. We agree. Compare *Galiotti v. Travelers Indemnity Company*, Del.Super., 333 A.2d 176 (1975); *Fidelity-Phenix Fire Insurance Co. v. Cortez Cigar Co.*, 5 Cir., 92 F.2d 882, *cert. denied*, 303 U.S. 636, 58 S.Ct. 521, 82 L.Ed. 1099 (1937); *Feller v. Equitable Life Assur. Soc.*, Fla.Supr., 57 So.2d 581 (1952). Such award is a procedural matter governed by the law of the forum. Reese and Rosen-

* 18 Del.C. § 4102 provides:
"The court upon rendering judgment against any insurer upon any policy of property insurance, as 'property' insurance

is defined in section 904 of this title, shall allow the plaintiff a reasonable sum as attorney's fees to be taxed as part of the cost."

berg, *Conflicts of Law*, 434 (6 ed.), and we therefore conclude that the Superior Court properly awarded counsel fees to plaintiffs.

### III

■ Finally, we consider the Trustee's contention that the Trial Court abused its discretion by refusing to assess his counsel fees as costs against Lloyd's under 18 Del. C. § 4102.

Intervention was permitted so that the Trustee could protect the mortgage claim and, specifically, his interest in any judgment awarded; compare *Bramble Transportation, Inc. v. Sem Senter Sales, Inc.*, Del.Super., 294 A.2d 97 (1971); he did not intervene to sue on the contract of insurance and there has been no showing that the Trustee's presence was necessary to enforce or protect contract rights.

While the Trustee has an understandable interest in the action and his participation was proper, it would not be fair to add this burden to defendants' obligation and we find no statutory intent to do so in § 4102.

Affirmed.