CASERTA, APPELLANT, *v.* ALLSTATE INSURANCE COMPANY, APPELLEE.

(No. 82AP-1088—Decided
December 29, 1983.)

*Mr. Byron Vickery* and *Mr. Mitchell J. Alter,* for appellant.

*Wiles, Doucher, Van Buren, Boyle & Casey Co., L.P.A., Mr. James M. Wiles* and *Mr. Michael J. Kelley,* for appellee.

WHITESIDE, P.J.   Plaintiff-appellant, William M. Caserta, appeals from a judgment of the Franklin County Court of Common Pleas and raises six assignments of error, as follows:

"I.   In opening statement, counsel for defendant willfully referred to a prejudicial matter which was inadmissible and willfully misrepresented to the jury what the evidence would show.

"II.   The trial court committed prejudicial error by overruling items 1C, 2 and 8 in plaintiff's pretrial motion in limine.

"III.   The trial court committed prejudicial error in not granting plaintiff's motion for a directed verdict, made after the close of defendant's opening argument, with reference to the issue of defendant's proof of the affirmative defense of arson.

"IV.   The trial court committed prejudicial error in the admission of evidence with regard to an alleged very extensive past history of the plaintiff in presenting insurance claims, notwithstanding plaintiff's objection.

"V.   The trial court committed prejudicial error in admitting the testimony of defendant's lead witness, Mr. Emory McDermitt, and overruling plaintiff's objection and subsequent motion to strike.

"VI.   The trial court erred in not granting plaintiff's motion for a new trial based upon the argument that the judgment was not sustained by the weight of the evidence."

By this action, plaintiff seeks to recover the proceeds of a fire insurance policy issued to him by defendant-appellee, Allstate Insurance Company, with respect to two separate fires occurring on August 25 and August 28, 1981, the second of which substantially destroyed plaintiff's home and its contents. At the time of both fires, plaintiff was a patient in a hospital. However, it is conceded by plaintiff that both fires were caused by arson committed by persons unknown.

Defendant raised several affirmative defenses, two of which went to trial: one of arson, whereby defendant contended that plaintiff intentionally set fire to his own home; and the other, that plaintiff fraudulently concealed and misrepresented material facts. The jury found for defendant on both of these issues, resulting in this appeal.

The first assignment of error relates to a statement by defense counsel during his opening statement that the evidence would "* * * show that over a * * * number of years that Mr. Caserta has maintained some associations with people that we have deemed to be questionable." For unexplained reasons, the trial court overruled plaintiff's immediate objection to this statement. The test to be applied in reviewing opening statements is set forth in the second

paragraph of the syllabus of *Maggio* v. *Cleveland* (1949), 151 Ohio St. 136 [38 O.O. 578], as follows:

"Counsel should be accorded latitude by the trial court in making his opening statement, but when he deliberately attempts to influence and sway the jury by a recital of matters foreign to the case, which matters he knows or ought to know cannot be shown by competent or admissible evidence, or when he makes a statement through accident, inadvertence or misconception which is improper and patently harmful to the opposing side, it may constitute the basis for ordering a new trial or for the reversal by a reviewing court of a judgment favorable to the party represented by such counsel."

In proving an arson defense, there are three basic elements: (1) fire of an incendiary origin; (2) motive on the part of the insured; and (3) opportunity of the insured to cause the fire. The first element was admitted by plaintiff, namely, that the fire was of incendiary origin. Defendant presented evidence of motive: that plaintiff might have caused the fire to be set in order to obtain the insurance proceeds. The weak portion of defendant's arson defense was opportunity, inasmuch as it was conceded not only that plaintiff was in poor health but that he was in the hospital at the time of the fires and could not personally have been involved in setting the fires. Thus, it was necessary that defendant prove that plaintiff caused the fire to be set, which can be proved by circumstantial evidence.

Defense counsel's opening statement was designed to influence the jury upon the issue. That this was the purpose is further evinced by defense counsel's statement, as to which no objection was interposed, immediately following the statement in question that: "The evidence is going to show that since 1975 Mr. Caserta has been involved in litigation on at least twenty-

two occasions"; and by a statement shortly thereafter that: "The evidence will show in this case that Mr. Caserta has a very extensive past record of insurance claims."

Defendant contends that its counsel's statement was not made in bad faith but under a reasonable belief that evidence on such issue would be admissible. Defendant did attempt to introduce clearly inadmissible evidence on the subject. Defendant attempted to show that a broker employed part time by plaintiff is a convicted felon, but the trial court sustained an objection to that question. However, at that point, defense counsel did argue that they should be allowed to present evidence that the plaintiff was associated with felons over a period of years both because of the credibility of plaintiff and because this would indicate opportunity to employ someone to set the fire. The trial court, however, properly stated: "Simply to put into the record that he was associated with, or he employed an ex-felon, and from that you may infer the fact that he hired this guy to commit the arson, no." Later, defendant attempted to introduce hearsay evidence of "* * * drops being made from airplanes, both day and night, to this house of what basically people have indicated as drugs * * *." The trial court properly excluded this evidence. (The foregoing referred-to discussions with the court were not in the presence of the jury.)

Even if defense counsel was under the misconception that the improper evidence was admissible and that the comment in the opening statement related to such evidence, we are nevertheless confronted with the rule of *Maggio, supra,* that, where counsel "makes a statement through * * * misconception which is improper and patently harmful to the opposing side, it may constitute the basis * * * for the reversal by a reviewing court of a judgment favorable to the party represented by such

counsel." In light of the minimal evidence concerning plaintiff's being involved in setting the fire, this statement by defense counsel during opening statement was not only objectionable and improper but may well have been a factor contributing to the verdict of the jury in favor of defendant. Even assuming that defense counsel made the statement in good faith through misconception, its only possible effect would be to prejudice the jury against plaintiff because of his bad associations, which was further suggested by the question of his employing an ex-felon, even though the objection was sustained by the trial court. The first assignment of error is well-taken.

The second assignment of error raises the issue of whether the trial court abused its discretion in overruling portions of a motion *in limine,* which plaintiff filed prior to trial. The assignment of error, however, relates to only three branches of the thirteen-branch motion *in limine,* namely, branches 1-C, 2 and 8.

Although plaintiff does not appear to be clear as to the purpose of a motion *in limine,* we must limit our discussion to that purpose. As we stated in *Riverside Methodist Hosp. Assn.* v. *Guthrie* (1982), 3 Ohio App. 3d 308, at 310, a motion *in limine* "* * * is only a preliminary interlocutory order precluding questions being asked in a certain area until the court can determine from the total circumstances of the case whether the evidence would be admissible * * *"; however, the overruling or "* * * the sustaining of a motion *in limine* does not determine the admissibility of the evidence to which it is directed. * * *" Thus, the purpose of a motion *in limine* is to prevent any reference to an area until admissibility can be determined because of the highly prejudicial nature of questions on that subject and the likelihood of prejudice being created merely by asking a ques-

tion in the area involved. See, also, *State* v. *Spahr* (1976), 47 Ohio App. 2d 221 [1 O.O.3d 289].

However, even if the trial court overrules a motion *in limine* under circumstances where it should have been sustained because of the prejudice inherent in merely asking an inadmissible question prior to admissibility being determined, there is no prejudice arising from such error or abuse of discretion unless the improper question is actually asked and an objection interposed at that time. If the trial court erroneously overrules the objection, the basis for error includes the overruling of the objection. If the trial court sustains the objection, the issue then is whether the asking of the question itself is so prejudicial under the circumstances that the overruling of the motion *in limine* constitutes prejudicial error. As to the first branch of the motion *in limine,* 1-C, plaintiff has not demonstrated that any prejudicial questions were asked concerning his sale of a Piper Aztec airplane and plaintiff's subsequent arrest with respect thereto, even though all charges were dismissed. The second branch of the motion, however, raises the same issue raised by the first assignment of error, namely, the preclusion of questions concerning "discussion of plaintiff's alleged prior relationship of both a personal and business nature with individuals who have either previously or subsequently been convicted of felonies." Since, as the trial court correctly noted later in the trial, there is no conceivable basis for admissibility of this type of evidence, with the possible exception of evidence concerning convicted arsonists or evidence indicating that one such person was involved in setting either of the fires, it would have been preferable had the trial court sustained this branch of the motion *in limine* precluding any questions in this area until admissibility could be determined. The failure to sustain this branch

of the motion *in limine* may well have led defense counsel into making the improper comment during opening statement. At least, we would assume that defense counsel would have made no such statement had the trial court sustained this branch of the motion *in limine*.

The third branch referred to, branch 8, pertains to sales of airplanes to several different persons. Plaintiff has pointed out no specific questions asked during the trial concerning these sales. Thus, even if the trial court erred in overruling this branch of the motion *in limine*, no prejudice has been demonstrated. Accordingly, the second assignment of error is well-taken with respect to branch 2 of the motion *in limine* but is not well-taken with respect to branches 1-C and 8.

By the third assignment of error, plaintiff contends that the trial court erred in overruling his motion for a directed verdict made at the close of defendant's opening argument with respect to the affirmative defense of arson. While it is true that defendant's counsel made no direct statement during the course of the opening statement that the evidence would prove that plaintiff in some manner was responsible for setting the fires, the statement as to the circumstantial evidence expected to be presented was sufficient to withstand a directed verdict at this point.

Although there is a dearth of Ohio authority upon the issue, cases from other jurisdictions generally hold that arson is an affirmative defense to be established by proof by a preponderance of the evidence that the insured participated in the burning of the property to obtain the insurance proceeds either by personally setting the fire or having someone else set it for him. Such may be proved by circumstantial evidence showing that the fire was of incendiary origin, that the insured has a motive to burn the property to obtain the insurance proceeds and that the insured had the opportunity to participate in the arson; however, almost all the cases indicate that mere proof of incendiary origin and motive is insufficient. See *Great Southwest Fire Ins. Co.* v. *Stone* (Ala. 1981), 402 So. 2d 899; *Interstate Fire Ins. Co.* v. *Ingram* (1974), 256 Ark. 986, 511 S.W. 2d 471; *Chester* v. *Assiniboia Corp.* (Del. 1976), 355 A. 2d 880; *Dunn* v. *Citizens Mut. Fire Ins. Co.* (1930), 251 Mich. 71, 231 N.W. 137; *George* v. *Travelers Indemn. Co.* (1978), 81 Mich. App. 106, 265 N.W. 2d 59; and *Quast* v. *Prudential Property & Cas. Co.* (Minn. 1978), 267 N.W. 2d 493. See, also, *State* v. *Whisler* (1942), 231 Iowa 1216, 3 N.W. 2d 525. Accordingly, plaintiff's third assignment of error is not well-taken.

The fourth assignment of error relates to the admission of evidence relating to prior insurance claims allegedly submitted by plaintiff. Ordinarily, evidence of other acts of a party not connected with the matter at issue is not admissible either to show the character of a party or that he acted in a particular manner in the present instance. Evid. R. 404(B) sets forth the test to be applied for the admission of this type of evidence, as follows:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

The evidence of other insurance claims does not tend to prove any of these items in this case, with the possible exception of knowledge of insurance procedures, which defendant contends was an issue. However, for the most part, except with respect to matters raised by the fifth assignment of error, plaintiff interposed few objections to the

testimony when it was introduced, apparently relying upon the motion *in limine* in this respect. Despite the questionable admissibility of much of this evidence, it is not clear that plaintiff preserved the claimed error with respect to much of the testimony other than that raised by the fifth assignment of error. Accordingly, the fourth assignment of error is not well-taken.

The fifth assignment of error relates to the testimony of plaintiff's former business partner, Emory McDermitt, to which plaintiff objected at the outset of the witness' testimony, made specific objections during the course of the testimony, some of which were sustained and some of which were overruled, and made a motion to strike at the conclusion of the witness' testimony, which the trial court overruled.

It is difficult to conceive of any proper basis for McDermitt's testimony. Even assuming that a small portion thereof could be argued to be admissible pursuant to Evid. R. 404(B) to show plaintiff's knowledge of insurance procedures, the evidence admitted went way beyond that purpose. In fact, as stated by defense counsel in his closing argument to the jury, the evidence was designed to suggest that plaintiff had committed insurance fraud by inducing the pilot of an airplane to deliberately crash the plane, thereby destroying the airplane and costing the pilot his life. No direct evidence was presented but merely the innuendo and suggestions of McDermitt upon this issue, although there was no doubt of the plane crash in which the pilot was killed and of McDermitt and plaintiff receiving the insurance proceeds on the airplane. Defense counsel spent considerable time arguing McDermitt's testimony, concluding with the statement in closing argument that:

"We brought that up for a reason. We didn't bring that up to cast disparaging remarks about anybody. That is called insurance fraud. That is called I can't pay my bill. So, maybe I better cash in on the policy. Let's dump it in the river."

Thus, the purpose of the evidence was to show that defendant had a bad character, that he was wont to commit insurance fraud, and that he acted accordingly on this occasion. Evid. R. 404(A) expressly states that: "Evidence of a person's character * * * is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion * * *." While there are certain exceptions to this rule, none of them apply here, with the possible exception of credibility which is governed by another rule. Likewise, as we have noted previously, Evid. R. 404(B) precludes evidence of other acts to prove the character of a person in order to show that he acted in that fashion on a given occasion, namely, the one at issue.

Defendant suggests that McDermitt's testimony could be admissible as to credibility. However, Evid. R. 608(B) expressly provides that: "Specific instances of the conduct of a witness, for the purpose of attacking * * * his credibility, other than conviction of crime * * * may not be proved by extrinsic evidence. * * *" That rule goes on to state that such evidence may be inquired into on cross-examination of the witness himself "if clearly probative of truthfulness or untruthfulness." Thus, even assuming that the inquiry, as to which no objections were interposed as we previously noted, during cross-examination of plaintiff might have been proper under Evid. R. 608(B), extrinsic evidence from McDermitt for the same purposes was not admissible. Accordingly, the trial court erred in overruling the objections to McDermitt's testimony and in overruling the motion to strike at the conclusion thereof. The fifth assignment of error is well-taken.

By the sixth assignment of error, plaintiff contends that the verdict of the

jury is against the manifest weight of the evidence both upon the issue of arson and the issue of misrepresentation. The jury returned a verdict in favor of defendant upon both affirmative defenses, although the findings as to misrepresentation varied substantially from those alleged in the amended answer.

Although there was evidence that both fires were caused by arson, there was no evidence indicating who set the fires. The evidence did indicate that plaintiff did not, inasmuch as he was in the hospital at the time. Defendant presented evidence tending to question the necessity of plaintiff's hospitalization at the time and that he had delayed his hospitalization for a short period, although the hospitalization was ordered by his doctor. The evidence indicated that plaintiff had placed the house on the market through a real estate broker for sale at a price of $225,000, which was later reduced to $185,000, but that no offers had been received. While the evidence indicated that plaintiff had a substantial net worth, including the value of the house, he would apparently have a cash-flow problem, as specifically he did not have cash to pay his outstanding debts as they matured if outstanding promissory notes held by banks were not renewed.

As we have noted previously, the evidence as to who set the fires and of plaintiff's involvement, if any, not only is circumstantial but is somewhat sketchy. The issue is compounded by the fact that two interrogatories were submitted to the jury with respect to this issue, with six jurors answering one interrogatory in the affirmative while all eight jurors answered the other interrogatory affirmatively, indicating confusion on the part of at least two jurors. Nevertheless, the deficiency in this respect stems more from the error which this court has already found to be prejudicial than in the total insufficiency of competent, credible evidence to support the finding. While the issue is somewhat borderline, we do not find the verdict to be against the manifest weight of the evidence as to arson.

As to misrepresentation, the jury found material misrepresentation or concealment, but in response to a question as to what it consisted, stated: "insolvency, lawsuits, and loans, and value of the IRA policy." Unfortunately, the actual answers to the interrogatories are not included in the record on appeal but are set forth in the transcript of proceedings. As to insolvency and the value of the IRA (Individual Retirement Account) policy, there is little support for these findings. The IRA policy was one issued by defendant to plaintiff and was a fully paid-up policy, having a minimum value of $98,000 maturing in 1998. It required expert testimony to ascertain that such value should be reduced to present value. There was no evidence that such a table was included in any policy issued to plaintiff by defendant of which plaintiff had actual knowledge. In light of the fact that the present value of the policy was within the knowledge of defendant, much more so than in the knowledge of plaintiff, and that expert testimony was required to establish the necessity of reducing the sum to present value and the amount thereof, this does not constitute a matter which could be properly chargeable to plaintiff as misrepresentation to defendant.

Expert testimony was also required to demonstrate the alleged insolvency, which consisted primarily of cash-flow problems. While this evidence was properly admissible to show motive, it is doubtful that it is sufficient to constitute a basis for finding misrepresentation. Plaintiff was not rendered insolvent except by defendant's refusal to pay the insurance proceeds to him. While the expert referred to plaintiff as being cash insolvent, there was contradicting evidence that plaintiff expended large sums of money for which he could not

account as to its source; whereas, at the same time, he had no outward cash in his possession at the time of the fires. He did have assets, including the house which burned, well in excess of his debts, although he did not have ready cash at hand, as far as this record demonstrates, with which to pay his debts as they matured, which would occur within several months after the fire, although some debts were due at that time. Most of the lawsuits involved either were filed or became judgments, after the fires. Evidence concerning the loans was somewhat confusing. The jury also found that plaintiff intentionally misrepresented the material facts with regard to evaluation of his loss but then inconsistently found that he did not intentionally misrepresent over-evaluation of the loss to induce defendant to pay more than it otherwise would. Both of the interrogatories on this issue were signed by six members, although we cannot ascertain whether it was the same six jurors in the absence of the interrogatories themselves being part of the record on appeal. Also, for whatever reason, this was not included within the specific finding the material facts or circumstances intentionally misrepresented by plaintiff. The jury also returned an interrogatory indicating that plaintiff committed fraud or false swearing to defendant.

While the evidence with regard to fraud or misrepresentation was somewhat tenuous, it was also admissible, as defendant points out, with respect to the affirmative defense of arson. In determining whether the verdict is against the manifest weight of the evidence, a reviewing court must look at the entire verdict, not merely to parts thereof, *e.g.,* answers to interrogatories. Even though some of the responses to interrogatories may be against the manifest weight of the evidence, that is not the issue. Rather, the verdict must be affirmed unless it is against the manifest

weight of the evidence in all respects. Viewing the record from this standpoint, we are unable to find the verdict to be against the manifest weight of the evidence. Nevertheless, the prejudicial error set forth above with respect to other assignments permeates the entire verdict, even though that verdict is not against the manifest weight of the evidence when all evidence adduced is considered. The sixth assignment of error is not well-taken.

For the foregoing reasons, the first and fifth assignments of error are sustained; the third, fourth and sixth assignments of error are overruled; and the second assignment of error is sustained in part and overruled in part. The judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to that court for further proceedings in accordance with law consistent with this decision.

*Judgment reversed*
*and cause remanded.*

McCORMAC and MOYER, JJ., concur.