ATTALLAH, APPELLANT, *v.*
MIDWESTERN INDEMNITY COMPANY,
APPELLEE.

(No. 54007 — Decided June 20, 1988.)

*Frank J. McNally* and *Thomas G. McNally,* for appellant.

*Gary W. Johnson* and *Kojo O. Agyeman,* for appellee.

Markus, J. The plaintiff-insured appeals from a summary judgment which dismissed her fire loss claim against the defendant-insurer. To support that judgment, the insurer argues that its contract and public policy bar recovery because the insured's husband hired the arsonist who caused the loss. However, the insured did not lose her right to payment unless (a) her husband instigated the arson of the insured store, and (b) he was then her business partner or joint adventurer for that store.

Genuine factual issues about those matters preclude a summary judgment in the insured's favor on the insurance claim. At the same time, the evidence effectively excluded any cognizable malice, so we affirm a partial summary judgment which denies any recovery for punitive damages.

### I

The parties supported their respective positions on the summary judgment motion with depositions or affidavits from the insured, her husband, an acquaintance of the insured's husband, and two of the insurer's claims personnel. Together with the pleadings, which incorporated the insurer's policy, these materials established the following facts.

The plaintiff was the named insured on a multiple-risk policy which designated her as the sole owner of the insured grocery store. The defendant's policy was in effect when a fire damaged the store's contents. The applicable endorsement for that policy provided in pertinent part[1]:

"SECTION VI — EXCLUSIONS

"A. This policy does not insure this firm against loss caused by:

"* * *

"10. any fraudulent, dishonest or criminal act done by or at the instigation of any insured, partner or joint adventurer in or of any insured, an of-

---

[1] The insurer's brief relies on somewhat different language in the underlying policy, which conformed to the Standard Fire Policy. The quoted endorsement "cancels and replaces any coverage on personal property provided under any other form made a part of this policy." Hence the original language in the underlying policy must yield to the endorsement.

ficer, director or trustee of any insured
* * * ."

The sole person or entity listed as an insured for this policy was "Yesrah Attallah [the plaintiff] DBA Crestline Market." The policy nowhere provides that any other person or entity is an additional insured for this type of loss. The applicable endorsement defines the covered property, which includes:

"Business personal property owned by the named insured [further modifying phrase deleted by another endorsement], including the named insured's interest in personal property owned by others * * * in or on the described buildings * * * or within 100 feet of the described premises."

The couple purchased the store together and placed it in the wife's name because the husband is not a citizen. The insured's husband wrote checks for the grocery store, handled its finances, and otherwise managed its daily operations. However, there was no direct evidence that the husband had any proprietary interest in the grocery store or the damaged property in it.

The husband's acquaintance stated in his deposition that he heard the husband hire another man to burn the store. The acquaintance also reported the alleged arsonist's hearsay account of the manner in which the arsonist burned the store with the husband's help.

In his deposition, the husband denied any knowledge about the source of the fire. He expressly denied that he "set the fire," "ask[ed] anyone to set this fire," or did "anything at all to assist someone setting the fire." In her deposition, the insured denied any knowledge about the circumstances surrounding the fire. The insurer's claims examiner admitted that he had no reason to believe that the insured wife had participated in or countenanced the arson.

II

The insured's fourth assigned error contests the denial of her claim for punitive damages. Her other assignments challenge the summary judgment which dismissed her action.[2]

The insurer defends the summary judgment with arguments that (a) the insurance contract excludes coverage because the husband participated in the arson which damaged the insured property, (b) public policy precludes coverage in that situation, if the insurance contract does not, and (c) the husband's conviction for that offense establishes his culpability as a matter of *res judicata* or collateral estoppel.

The insured business was not a corporation or a trust. Hence, the policy language excludes coverage only if the loss was caused by a fraudulent, dishonest or criminal act done by or at the instigation of the insured, her partner, or her joint adventurer. Arson is an affirmative defense to a fire loss insurance claim. *Caserta* v. *Allstate Ins. Co.* (1983), 14 Ohio App. 3d 167, 171, 14 OBR 185, 189, 470 N.E. 2d 430, 435.

The insurer may be able to satisfy a factfinder that the insured participated in or instigated arson which caused the claimed loss. Alternatively, the insurer may be able to show that her husband did and that he was her partner or joint adventurer. However, its evidence in support of its motion did not preclude genuine issues about those facts and thereby justify summary judgment in its favor. See Civ. R. 56(C); *Morris* v. *Ohio Cas. Ins. Co.* (1988), 35 Ohio St. 3d 45, 47, 517 N.E. 2d 904, 906-907.

The insurer argues that the husband's conviction on a no contest plea for arson of this store precludes the in-

---

[2] An appendix to this opinion lists the five assignments of error.

sured from denying his guilt. However, the record here contains no evidence of that alleged conviction. Moreover, the husband's conviction for arson of these premises would not prevent the insured from disputing his involvement in that event. Since neither the insured nor the insurer was a party to that alleged criminal case, the resulting judgment would not preclude either of them from relitigating that issue. *Johnson's Island* v. *Bd. of Twp. Trustees* (1982), 69 Ohio St. 2d 241, 244, 23 O.O. 3d 243, 245, 431 N.E. 2d 672, 674; cf. *Hicks* v. *De La Cruz* (1977), 52 Ohio St. 2d 71, 74, 6 O.O. 3d 274, 276, 369 N.E. 2d 776, 777-778.

If the husband testifies, such a prior conviction might serve to impeach his general credibility. Evid. R. 609(A). However, it cannot serve as evidence that he committed the offense, if the conviction resulted from a no contest plea. Evid. R. 803(21).

The insurer also contends that the husband's complicity in arson bars his wife's claim, as a matter of public policy, regardless of the policy's terms. We disagree. The insured's marital relationship with an arsonist does not make her accountable for his misconduct. See *Steigler* v. *Ins. Co. of North America* (Del. 1978), 384 A. 2d 398, 399-400; *Hosey* v. *Seibels Bruce Group, South Carolina Ins. Co.* (Ala. 1978), 363 So. 2d 751, 753-754; cf. *Marks* v. *Beacon Mut. Indemn. Co.* (Feb. 8, 1983), Ross App. No. 935, unreported; *Kitchen* v. *Motorists Mut. Ins. Co.* (Mar. 18, 1983), Pike App. No. 355, unreported. See, also, Dickens, Oliver Twist (1837), Chapter LI ("If the law supposes that * * * the law is a ass * * *").

We recognize that significant earlier authority seemingly visited the wrongs of one spouse upon the other, on the theory that they jointly owned all insured property. See 5 Appleman, Insurance Law & Practice (Rev. 1970), Section 3113, at 386; 18 Couch on Insurance 2d (Rev. Ed. 1983), Section 74:673, at 992-993. More recent authority, cited above, precludes an arsonist from recovering for his share of jointly owned property, without impairing an innocent spouse's recovery for her loss.

Finally, we agree with the insurer that its evidence precludes a finding that it acted maliciously by refusing to pay the insured's claim. Absent such a finding, an insured cannot recover punitive damages. *Shimola* v. *Nationwide Ins. Co.* (1986), 25 Ohio St. 3d 84, 86, 25 OBR 136, 138, 495 N.E. 2d 391, 393; *Hoskins* v. *Aetna Life Ins. Co.* (1983), 6 Ohio St. 3d 272, 278, 6 OBR 337, 342, 452 N.E. 2d 1315, 1321.

As we stated earlier, significant prior authority elsewhere denied an insured's recovery when the insured's spouse caused the loss by arson. Without any contrary controlling Ohio authority, the insurer could reasonably assert that defense until it was rejected. Cf. *Anderson* v. *Continental Ins. Co.* (1978), 85 Wis. 2d 675, 691, 271 N.W. 2d 368, 376. Further, genuine factual issues still remain whether the insured's husband instigated arson at the insured premises and whether he was her partner or joint adventurer.

Therefore, we overrule the insured's fourth assignment of error, and affirm that part of the summary judgment which denied the insurer's liability for punitive damages. Otherwise, we sustain the insured's remaining assignments of error, reverse the summary judgment, and remand the case for further proceedings.

*Judgment reversed in part,*
*affirmed in part*
*and cause remanded.*

KRUPANSKY, P.J., and J.V. CORRIGAN, J., concur.

150

Appendix

Assignments of Error

"1. Plaintiff is not barred from recovery under the terms of the insurance contract.

"2. Totally independent of the terms of the insurance contract, Plaintiff is not barred from recovery as a matter of law.

"3. Mr. Attallah's criminal conviction for arson is not a collateral estoppel to the claim on this insurance policy.

"4. There is a basis for an award of punitive damages against this Defendant-Appellee.

"5. The Trial Court Judge was in error when she granted Appellee's Motion for Summary Judgment."