OPINION
{¶ 1} This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, and their oral arguments before this court. Plaintiff-Appellant, Pantelis Kolidakis, appeals the judgment of the Mahoning County Court of Common Pleas which granted a directed verdict in favor of one Defendant-Appellee, Sondra Bell nee Schlesser, and denied a motion for a new trial after the jury's general verdict in favor of the other two Defendant-Appellees, Johnny Jones and Glenn McClendon Trucking Company.
 {¶ 2} Kolidakis argues the trial court abused its discretion for excluding his expert witness's testimony. But Kolidakis only informed Appellees of this witness a week before trial and Appellees did not have their own expert to assist in that deposition, to assist in cross-examination, or to rebut that expert's testimony. Accordingly, the trial court did not abuse its discretion when excluding that expert witness's testimony.
 {¶ 3} Kolidakis also contends that he was prejudiced by defense counsel's references in opening arguments to a non-expert opinion as to what caused the accident and his questions to that witness on cross-examination. After examining the evidence in this case, we conclude that it is substantially likely that Kolidakis was prejudiced by defense counsel's improper references to a non-expert opinion. In a close case of conflicting evidence, the opinion rendered by the investigating officer on the ultimate issues in the case and the references to that opinion by counsel in opening statements probably affected the jury's verdict. Thus, the trial court's decision is affirmed in part, reversed in part and this case is remanded for a new trial.
 Facts {¶ 4} Bell and Jones were driving semi-trailer trucks on behalf of Glenn McClendon. Bell was following Jones at about one and a half to two truck lengths back. While the two were heading south on U.S. 23 they came upon a construction site. Barrels and signs directed all traffic into the left lane and tarps covered the area under an overpass in the right lane. Neither driver saw anyone at the construction site as they approached. Jones testified that he was traveling at about forty miles per hour through the construction zone and Bell testified that she was going approximately forty-five miles per hour through that zone.
 {¶ 5} Jones passed under the overpass without incident. But when Bell reached the overpass, Kolidakis stumbled out from the tarps into her lane. She swerved to the left, but could not avoid hitting him with the front-right corner of her truck. Bell and Jones pulled to the side of the road after the accident.
 {¶ 6} That day, the company Kolidakis worked for was in the process of painting the overpass, which involved hanging tarps to protect the worksite. By the time Jones and Bell were approaching the work site, the tarps facing north and south had been hung and secured and the crew was in the process of hanging the final tarp adjacent to the left lane of traffic. Kolidakis' job at that time was to hang on to the bottom of the tarp while it was being secured to the top. Bell and Jones passed while he was doing this. After Jones passed, the tarp knocked Kolidakis into the lane of traffic where he was hit by Bell. After the accident, all the parties were interviewed by State Highway Patrolmen. The sergeant at the scene, Grant Carper, compiled an accident report.
 {¶ 7} Kolidakis filed a complaint against Glenn McClendon, Jones, and Bell, but voluntarily dismissed that complaint. Subsequently, he filed a second complaint against these defendants which claimed that Bell and Jones acted negligently within the course and scope of their employment with Glenn McClendon. During the course of that litigation, the trial court ordered that all discovery be completed by November 1, 2001, and stated that failure to provide the names, addresses, and reports of all expert witnesses by this date would result in the exclusion of that expert's testimony at trial.
 {¶ 8} The case was set for trial on January 27, 2003. That day, the defendants moved in limine to exclude the testimony of one of Kolidakis' experts. The defendants alleged that they received notification of this expert and his report after 5:00 p.m. on January 20, 2003, less than seven days before trial. The trial court granted the defendants' motion and excluded the expert's testimony.
 {¶ 9} During opening statements, the defendants' attorney was describing Sergeant Carper's investigation of the accident. While doing so, the attorney made the following statements over Kolidakis' objections:
 {¶ 10} "He makes some conclusions about what he sees out there from everything he is told, including what is told by the plaintiff himself. This accident was not caused by a truck driver. There is no evidence of wrongdoing by the truck drivers * * * He will tell you he found very little evidence of wrongdoing by the truck drivers. Very clearly he puts it in his report. He also puts in his report what he feels is the explanation for the accident which is the pedestrian. He feels that the pedestrian, by not taking care of his own safety, by not keeping himself out in the open, ladies and gentlemen, where traffic was lawfully allowed to approach, that this pedestrian was the cause of the accident."
 {¶ 11} During defense counsel's cross-examination of Sergeant Carper, the following exchange took place:
 {¶ 12} "Q: Sir, during the course of your investigation and your analysis of what happened out there, did you find any evidence of wrongdoing on the part of either of the two truck drivers?
 {¶ 13} "A: I saw no negligence on those units, no.
 {¶ 14} "Q: And again the same question. During the course of your investigation, did you find any evidence of wrongdoing on the part of pedestrian Kolidakis?
 {¶ 15} "Ms. Makridis: For the record, I would like to object."
 {¶ 16} After a sidebar, defense counsel withdrew the objectionable question.
 {¶ 17} At the close of Kolidakis' case, the trial court granted Bell's motion for a directed verdict. Then, following the remainder of the evidence, the jury returned a general verdict in favor of the remaining defendants.
 {¶ 18} After the jury rendered its verdict, Kolidakis timely moved for a new trial based upon defense counsel's comments about Sergeant Carper's conclusions during opening statements and the questions counsel asked Sergeant Carper during cross-examination. The trial court denied that motion.
 Exclusion of Expert Witness {¶ 19} In his third of three assignments of error, which we will address first for purposes of clarity, Kolidakis argues:
 {¶ 20} "The trial court abused its discretion in granting Appellees' motion in limine and excluding the testimony of Appellant's expert."
 {¶ 21} Kolidakis contends that the testimony of this expert would demonstrate how the accident happened and that it would neither surprise nor prejudice the defendants since this expert's testimony was consistent with Kolidakis' long-stated theory of the case. He further contends that the late disclosure of the expert was not an example of gamesmanship since his attorney informed the defendants of the expert's report immediately after receiving it. Finally, he contends that any prejudice to the defendants could be removed by a deposition of the expert before or during trial. In response, Appellees argue that they would have been unfairly prejudiced if Kolidakis was allowed to introduce the testimony of this expert since this expert was not timely identified. They claim that the prejudice to them by identifying an expert so late in the litigation is obvious and that the trial court acted properly when excluding his testimony. In addition, Appellees argue that the expert's report does not demonstrate how any of them negligently caused the accident.
 {¶ 22} In this case, Appellees filed a motion in limine to exclude the testimony of Kolidakis' expert. A trial court's decision over whether to exclude an expert witness due to unfair surprise is reviewed for an abuse of discretion. Huffman v. HairSurgeon, Inc. (1985), 19 Ohio St.3d 83, 86.
 {¶ 23} Kolidakis arguably violated Civ.R. 26(E)(1)(b) by identifying the identity of this expert witness one week before trial was scheduled to begin. That rule provides that a party has the duty to supplement his answers to discovery inquiries into "the identity of each person expected to be called as an expert witness at trial and the subject matter on which he is expected to testify." Id. One of the purposes behind this rule is to eliminate surprise. Jones v. Murphys (1984), 12 Ohio St.3d 84,86. A trial court may impose Civ.R. 37(D) sanctions for a violation of Civ.R. 26(E)(1)(b), including the exclusion of a prospective witness. Id. at syllabus. Kolidakis argues that he did not violate the letter of the rule since he did inform the Appellees of the expert prior to trial. Nevertheless, Ohio courts have found a violation of Civ.R. 26(E)(1)(b) in similar circumstances.
 {¶ 24} In Jones, the trial court ordered that all discovery in the case be completed by October 30, 1982. On April 27, 1982, the defendant served interrogatories on the plaintiffs, requesting the names and addresses of all expected expert witnesses. The plaintiffs did not supply the names of any experts, even after the defendant twice renewed the request after the discovery deadline passed. Twelve days prior to trial, the defendant's attorney learned by telephone that the plaintiffs intended to call an expert witness. The next day, the defendant filed a motion in limine to exclude the testimony of any expert the plaintiffs planned to call and the trial court granted that motion. On appeal, the Ohio Supreme Court found that the plaintiffs' actions were a violation of Civ.R. 26(E)(1)(b) and affirmed the trial court's decision.
 {¶ 25} The Ohio Supreme Court had previously dealt with a comparable situation in Paugh Farmer, Inc. v. Menorah Home forJewish Aged (1984), 15 Ohio St.3d 44. In this case, the trial court ordered that all expert reports be filed by April 15, 1981, and set July 13, 1981 as the trial date. On June 4, 1981, the defendant moved for an extension of this deadline, but that motion was never acted upon. One week prior to trial, the defendant furnished the plaintiff with an expert's report. The defendant then tried to call this expert as a witness at trial. The plaintiff objected and the trial court sustained the objection. The Ohio Supreme Court affirmed the trial court's decision based on a local rule which stated that any expert witness whose report was not furnished to opposing counsel prior to the pretrial would not be permitted to testify at trial.
 {¶ 26} A third similar situation occurred in Huffman.
There, the plaintiffs filed their complaint on April 8, 1982. The parties prepared their cases and the defendant took depositions from the plaintiffs' expert witnesses. The plaintiffs finalized their medical testimony by August 1983 in preparation for the September 12, 1983, trial date. Up to this point, the defendant had not identified any prospective expert witnesses. On September 7, 1983, the defendant's attorney informed the plaintiffs' attorney that there was a possibility that it might call an expert witness and confirmed this possibility the next day. On September 9, 1983, the plaintiffs filed a motion in limine seeking to exclude this expert's testimony. At a hearing on the motion, the defendant did not propose an alternative sanction. Accordingly, the trial court granted the motion and excluded that expert witness's testimony. The appellate court reversed this decision since the trial court did not consider "other means of remedying unfair surprise". But the Ohio Supreme Court disagreed. It concluded that the primary concern when a party violates Civ.R. 26(E)(1)(b) is the existence and effect of the prejudice resulting from the party's noncompliance with the rule. And it decided "that it was certainly not an abuse of discretion for the trial court to have concluded that, in order to effect a just result, appellants' motion to exclude appellee's surprise expert witness must be granted." Id. at 86.
 {¶ 27} In the past, this court has emphasized that the exclusion of an expert witness's testimony because of an untimely disclosure of the existence of that expert "`is a severe sanction and should be invoked only when clearly necessary to enforce willful noncompliance or to prevent unfair surprise'" and that the party seeking to have the evidence excluded bears the burden of establishing the justification for the exclusion.Endsley v. Fergus (July 9, 1998), 7th Dist. No. 96 C.A. 94, quoting Weimer v. Anzevino (Sept. 15, 1997), 7th Dist. No. 95-C.A.-144. And in Endsley, this court concluded that the trial court was not required to exclude an expert witness's testimony. But there are three reasons why Kolidakis cannot rely on Endsley in this case.
 {¶ 28} First, in this case the trial court decided to exclude the evidence while it decided not to exclude the evidence inEndsley. Since this court reviews a trial court's decision on this issue for an abuse of discretion, we must decide whether the trial court's decision in any particular case was unreasonable, arbitrary or unconscionable and cannot substitute our judgment for that of the trial court. Berk v. Matthews (1990),53 Ohio St.3d 161, 169. The fact that one court may exclude evidence in one case does not mean that it acts improperly when it refuses to do so in another.
 {¶ 29} Second, the plaintiffs in Endsley had ample opportunity to depose the proposed expert and had an expert of their own to rely on when preparing for trial. In this case, Kolidakis provided notice of this expert one week before trial and the defendants never got a chance to depose that expert. This difference is significant since Appellees would be prejudiced by the inability to adequately prepare for this witness.
 {¶ 30} Finally, Endsley is of limited precedential value. One of the main cases Endsley relied upon was a previous decision of this court, Cucciolillo v. East Ohio Gas Co.
(1980), 4 Ohio App.3d 36. In Cucciolillo, this court held that the sanction of exclusion for a Civ.R. 26(E)(1)(b) violation was an "extreme" sanction and that the party seeking the exclusion bore the burden of proving "bad faith" or "willful noncompliance" with the Rules of Civil Procedure before the trial court could grant the exclusion. But the Ohio Supreme Court specifically addressed this holding in Jones. It concluded that theCucciolillo court never considered the effect of Civ.R. 37 when determining whether the exclusion of evidence for a Civ.R. 26(E)(1)(b) violation was proper. It specifically stated that the precedential value of Cucciolillo was limited in scope. Id. at 85-86. Nevertheless, in Endsley this court conducted the same type of analysis as it did in Cucciolillo, focusing on the misfeasance of the noncompliant party rather than "the existence and effect of the prejudice resulting from the party's noncompliance with the rule." Huffman at 85. We specifically reject this analysis and follow the Ohio Supreme Court's decision in Jones.
 {¶ 31} In this case, the trial court reasonably concluded that Appellees would be unfairly prejudiced if this expert was allowed to testify. The trial court set a discovery deadline of November 1, 2001, and Kolidakis did not notify Appellees of this expert until January 20, 2003, seven days before trial. The trial court's entry setting the discovery deadline stated that any expert not identified by that time would be excluded from trial. Although Kolidakis argues there was time to depose this witness within that time, Appellees did not have their own expert to assist in that deposition, to assist in cross-examination, or to rebut that expert's testimony. Given these facts, the trial court did not abuse its discretion when excluding this evidence. Kolidakis' third assignment of error is meritless.
 Police Officer's Opinion on Causation {¶ 32} The first two of Kolidakis' assignments of error are based on his belief that Sergeant Carter could not state who he believed was at fault for the accident. Accordingly, they will be addressed together, and argued respectively:
 {¶ 33} "The trial court erred to the prejudice of Appellant in permitting counsel for Appellees to describe to the jury in opening statement anticipated evidence in the nature of an inadmissible opinion of a law enforcement officer attributing fault for the accident to Appellant, and that no fault could be attributed to Appellees."
 {¶ 34} "The trial court erred to the prejudice of Appellant in not instructing the jury to disregard testimony of a law enforcement officer that there was no fault attributable to Appellees for the accident which caused Appellant's injuries."
 {¶ 35} In each of these assignments of error, Kolidakis argues that he was prejudiced by defense counsel's attempts to introduce Sergeant Carper's conclusion that Kolidakis, rather than the truck drivers, caused the accident. In response, Appellees argue that Sergeant Carper was qualified to opine about who caused the accident. Appellees cite a variety of cases in support of their conclusion that this testimony would be admissible. But these cases do not support their argument. Instead, they all demonstrate that the testimony Appellees were trying to elicit was inadmissible.
 {¶ 36} As Appellees point out, the seminal case regarding whether an accident investigator can opine about what caused an accident is Scott v. Yates (1994), 71 Ohio St.3d 219. InScott, the court distinguished between someone who investigates accidents and someone who reconstructs accidents. The former is qualified to collect data at the accident scene and to testify as to his observations. In contrast, the latter uses scientific methodology to draw inferences from the investigative data. The court declined the opportunity to draw a clear distinction between the two. But it reversed the trial court's decision to allow the police officer's opinion as to how the accident occurred. The police officer admitted he did not have expertise in accident reconstruction. Accordingly, the Ohio Supreme Court concluded that he did not have the knowledge or expertise to render an opinion on what caused the accident.
 {¶ 37} Appellees argue that State v. Woods (Aug. 21, 1998), 7th Dist. No. 94-CA-129, supports a conclusion that Sergeant Carper was qualified to opine on who caused the accident. But inWoods this court did not affirm a decision where a police officer gave an opinion on how an accident was caused. Instead, this court affirmed a police officer's ability to testify as to his investigation of a vehicle and to give his opinion as to the safety of that vehicle. This court specifically distinguished this from when an officer testifies as to which party was at fault and how the accident occurred, which is the type of testimony Appellees attempted to elicit from Sergeant Carper.
 {¶ 38} Appellees also cite State v. Rutter, 4th Dist. No. 02CA17, 2003-Ohio-0373, in support of their contention that Sergeant Carper's conclusions would be admissible. But once again, Rutter does not support their argument. In Rutter, the police officer was asked to give his opinion on whether the defendant was the driver of a vehicle. The appellate court concluded that this testimony was admissible because, unlike the officer in Scott, the police officer did not testify as to the cause of the accident. Id. at ¶ 52.
 {¶ 39} A review of other Ohio cases clarifies that a witness who is allowed to testify about the cause of an accident must have some knowledge or expertise into the cause of accidents. SeeKish v. Withers (1997), 123 Ohio App.3d 132, 136; Abraham v.Werner Enterprises, 6th Dist. No. E-02-013, 2003-Ohio-3091, ¶ 28; State v. O'Linn (Mar. 16, 2000), 8th Dist. No. 75815;Pullins v. Vallery (Nov. 1, 1995), 4th Dist. No. 94CA544. This is in accordance with Evid.R. 702(B) which requires that a witness have specialized knowledge, skill, experience, training, or education to qualify as an expert.
 {¶ 40} In this case, Sergeant Carper did not demonstrate that he had any of the specialized knowledge, skill, experience, training, or education required by Evid.R. 702(B). He testified that he had investigated close to five thousand accidents. But asScott makes clear, accident investigation is different than accident reconstruction. Regardless, Sergeant Carper testified that none of the accidents he had investigated were like this one. In addition, the record does not indicate that Sergeant Carper received any training in accident reconstruction. Besides the fact that Sergeant Carper has investigated dissimilar accidents in the past, there is no indication that he has "some knowledge on the particular subject superior to that possessed by an ordinary juror." Scott at 221. Appellees' arguments to the contrary are meritless.
 {¶ 41} Since Sergeant Carper was not qualified to testify as to what caused the accident in this case, we must decide whether either Appellees' counsel's comments during opening statements or the trial court's failure to instruct the jury to disregard the objectionable portion of Sergeant Carper's testimony is cause for reversal.
 {¶ 42} Kolidakis objected to Appellees' counsel's comments about Sergeant Carper's conclusions during opening statements and that objections was overruled. He then used these comments as the basis for his motion for a new trial. Kolidakis also objected during defense counsel's cross-examination of Sergeant Carper when counsel asked the Sergeant's opinion on who caused the accident and the trial court did not give a curative instruction.
 {¶ 43} Generally, the scope of remarks made during counsel's opening statement are matters left to the trial court's sound discretion. State v. Armstead (1993), 85 Ohio App.3d 247, 250. Likewise, the decision to grant or deny a motion for a new trial pursuant to Civ.R. 59 lies in the trial court's discretion and will not be reversed absent an abuse of that discretion. Sharpv. Norfolk W. Ry. Co. (1995), 72 Ohio St.3d 307, 312. Finally, when or when not to give a curative instruction is left to the sound discretion of the court. State v. Zimmerman (Dec. 29, 1995), 6th Dist. No. L-95-162. An abuse of discretion is more than an error of law or of judgment; it happens when the trial court's attitude is unreasonable, arbitrary or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 44} Counsel is afforded wide latitude when making opening statements, "but when he deliberately attempts to influence and sway the jury by a recital of matters foreign to the case, which matters he knows or ought to know cannot be shown by competent or admissible evidence, or when he makes a statement through accident, inadvertence or misconception which is improper and patently harmful to the opposing side, it may constitute the basis for ordering a new trial or for reversal by a reviewing court of a judgment favorable to the party represented by such counsel." Maggio v. City of Cleveland (1949), 151 Ohio St. 136, paragraph two of the syllabus; see also Snyder v. Stanford
(1968), 15 Ohio St.2d 31, 34; Presley v. Hammack, 7th Dist. No. 02 JE 28, 2003-Ohio-3280, ¶ 33.
 {¶ 45} A verdict may be reversed due to counsel's improper remarks during opening statements even if counsel was under the misconception that the improper evidence was admissible if the only possible effect of the remarks would be to prejudice the jury against the opposing party. Caserta v. Allstate Ins. Co.
(1983), 14 Ohio App.3d 167, 169. The effect improper argument has upon a jury can be evaluated in terms of both its evidentiary basis and the likelihood that such argument will improperly prejudice the jury. Dillon v. Bundy (1991), 72 Ohio App.3d 767,772; Presley at ¶ 34. "Remarks which are not warranted by the evidence and are designed to arouse passion or prejudice to the extent that there is a substantial likelihood that the jury may be misled may constitute prejudicial error." Jones v. Olcese
(1991), 75 Ohio App.3d 34, 40. This court should not reverse the trial court's decision unless the record clearly demonstrates that counsel's argument was highly improper and inflamed the jury. Id.
 {¶ 46} As discussed above, counsel's statements were improper. There is no indication in the record that Sergeant Carper was qualified to render an opinion as an expert on the cause of the accident and on appeal Appellees have not given any indication of how counsel could have believed in good faith that Sergeant Carper could be qualified to render an opinion as an expert. Instead, Appellees argue that Sergeant Carper should be allowed to give his opinion since it that conclusion is "inescapable". But the fact that counsel believes that this conclusion is inescapable means that the jury was just as qualified as Sergeant Carper to make that conclusion.
 {¶ 47} Accordingly, the issue we must decide is whether there was a substantial likelihood that counsel's references to Sergeant Carper's conclusions would mislead the jury. During his opening statement, defense counsel stated that Sergeant Carper concluded that the accident was caused by Kolidakis, not either of the truck drivers. Defense counsel's opening statement fills sixteen pages of trial transcript and his remarks about Sergeant Carper's conclusions encompass almost four of those pages. Accordingly, it appears fair to say that Sergeant Carper's conclusions were a point of emphasis for defense counsel. Furthermore, when Kolidakis objected to these comments, the trial court overruled the objection.
 {¶ 48} But the prejudice these remarks may have caused is tempered by the trial court's subsequent instructions. The trial court instructed the jury that counsel's opening statements were meant to aid the jury in its analysis of the evidence, but that those statements were not themselves evidence. "A presumption always exists that the jury has followed the instructions given to it by the trial court." Pang v. Minch (1990),53 Ohio St.3d 186, paragraph four of the syllabus. Given the trial court's general instruction, the jury would not have accepted defense counsel's comments as evidence. Nevertheless, the trial court never specifically instructed the jury to disregard these particular comments.
 {¶ 49} The prejudice that Kolidakis suffered as a result of defense counsel's comments during opening arguments was exacerbated by defense counsel's cross-examination of Sergeant Carper. During that examination, defense counsel asked Sergeant Carper if he found any evidence of wrongdoing by either of the truckers. After Sergeant Carper answered in the negative, defense counsel asked the same question about the pedestrian. Before Sergeant Carper answered Kolidakis objected to the question. The parties had an unrecorded sidebar and defense counsel withdrew the question. The trial court never directed the jury to disregard either of defense counsel's questions or Sergeant Carper's last response.
 {¶ 50} The trial court's failure to give a curative instruction may well mean that the jury used inadmissible evidence in reaching its verdict. See Drake v. CaterpillarTractor Co. (1984), 15 Ohio St.3d 346, 348. This, of course, is the subject of Kolidakis' second assignment of error. But the record does not reveal that Kolidakis ever requested a curative instruction. "The failure to request a curative instruction at the time error can be avoided or corrected precludes any claim of error on appeal where it appears that a curative instruction would have obviated the potential prejudice." McNulty v. PLSAcquisition Corp., 8th Dist. Nos. 79025, 79125, 79195, 2002-Ohio-7220, ¶ 87, citing State v. Lancaster (1971),25 Ohio St.2d 83; Whitenight v. Dominique (1995), 102 Ohio App.3d 769. Nevertheless, this does not mean that defense counsel's questions and Sergeant Carper's answer did not exacerbate the prejudice that came from defense counsel's opening statement.
 {¶ 51} Appellees argue that any prejudice that Kolidakis may have suffered is mitigated by the fact that Kolidakis proffered an unredacted version of the traffic crash report that Sergeant Carper completed into evidence. The last page of that report contains the factors that Sergeant Carper believed contributed to the accident, including road and weather conditions, traffic controls in the area, and other contributing factors. Other courts have found that this portion of a crash report is inadmissible since it contains lay opinion based on hearsay.Sanders v. Hairston (1988), 51 Ohio App.3d 63; see also Pettiv. Perna (1993), 86 Ohio App.3d 508; Grange Mut. Cas. Co. v.Seward (Jan. 26, 1994), 3rd Dist. No. 17-93-7. But Kolidakis cannot object to the contents of this report since he proffered the report into evidence.
 {¶ 52} In this case, the traffic crash report addresses the conditions at the time of the accident, describes the pre-crash actions of Bell and Kolidakis, and renders an opinion as to what was the first harmful event and what were contributing factors to the crash. It concludes that there was no driver error on behalf of Bell and that Kolidakis' actions contributed to the accident. Accordingly, any opinion that Sergeant Carper gave at trial regarding Bell's negligence would be rendered harmless by the admission of his report into evidence. Furthermore, the trial court granted a directed verdict to Bell and Kolidakis is not challenging that decision on appeal.
 {¶ 53} But Sergeant Carper's report gives no opinion as to whether Jones contributed to or caused the accident; it only addressed how Bell and Kolidakis contributed to the accident. And the issue submitted to the jury was whether or not Jones was negligent. Appellees' counsel was aware that the traffic crash report only dealt with the actions of Bell and Kolidakis. And given the caselaw, he knew that Sergeant Carper was not qualified to render an expert opinion in this case without laying a proper foundation. The fact that the traffic crash report was admitted does not render any error regarding either counsel's comments during opening statements or Sergeant Carper's testimony harmless.
 {¶ 54} In this case, defense counsel's improper actions likely affected the outcome of the trial. The evidence regarding the truck's speeds conflicted. Jones testified that he was traveling at forty miles per hour. Bell testified that she was following Jones at forty-five miles per hour. A witness testified that he believed Jones was traveling at fifty-five miles per hour. And Kolidakis testified that Jones' speed had to be "excessive" to cause the tarp to billow as much and as forcefully as it did. Given these facts, the jury could have believed either the plaintiff's or the defendants' version of the facts. Sergeant Carper's inadmissible opinion could only serve to prejudice Kolidakis. We conclude that there is a substantial likelihood that defense counsel's references to this opinion affected the outcome of the case.
 {¶ 55} Accordingly, the judgment of the trial court is affirmed in part as to the exclusion of Kolidakis' expert witness, reversed in part as to Jones and Glenn McClendon Trucking and this cause is remanded to the trial court for a new trial against these parties. As the directed verdict in favor of Bell has not been appealed, that judgment remains in full force and effect.
Waite, P.J., concurs in judgment only.
Vukovich, J., concurs.