**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 04a0159n.06
Filed: December 16, 2004

No. 03-3824/3825

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| B-T DISSOLUTION, INC., | ) | |
| fka Tube Products Corporation, | ) | |
| fka TPC Acquisitions, Inc., | ) | |
| | ) | |
| Plaintiff-Appellee/ | ) | ON APPEAL FROM THE UNITED |
| Cross-Appellant, | ) | STATES DISTRICT COURT FOR THE |
| | ) | SOUTHERN DISTRICT OF OHIO. |
| v. | ) | |
| | ) | |
| PROVIDENT LIFE AND ACCIDENT | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant-Appellant/ | ) | |
| Cross-Appellee. | ) | |

Before: KEITH, CLAY, and BRIGHT,* Circuit Judges.

PER CURIAM. Provident Life and Accident Insurance Company ("Provident") appeals the

district court's judgment, after a bench trial, in favor of B-T Dissolution, Inc. ("B-T"), for certain

insurance benefits, and B-T appeals from the district court's grant of summary judgment in favor

of Provident on B-T's claim of bad-faith denial of benefits.

Provident issued a disability insurance policy to B-T insuring Steven S. Matthews ("Matthews"),

an employee of B-T. B-T and Matthews had a buy-sell agreement by which B-T would purchase

---

*The Honorable Myron H. Bright, United States Circuit Judge for the Eighth Circuit, sitting
by designation.

the shares of B-T owned by Matthews if Matthews became totally disabled. B-T's insurance policy with Provident provided a payout to B-T to cover such a purchase.

B-T and Matthews applied for the policy in 1994, and Provident issued the policy, which became effective on April 1, 1994. The district court found that Matthews became disabled on October 31, 1994. Matthews' disability was caused by a psychological impairment that Matthews' treating physician diagnosed as "panic disorder and specific phobia of returning to work." Matthews resigned from B-T on January 25, 1995, triggering his buy-sell agreement with B-T. B-T filed a claim with Provident on April 15, 1994, seeking indemnification under the policy for the buy-out of Matthews' shares. Provident denied liability and coverage under the policy on October 14, 1997. B-T then brought this proceeding seeking recovery under the policy plus damages for bad faith on the part of Provident in declining payment under the policy. The district court, in a bench trial, rejected Provident's defenses to liability and coverage under the policy and thereafter granted summary judgment rejecting B-T's claim to damages for bad faith in the handling of the claim.

Provident on this appeal asserts that the trial court: (1) misapplied Ohio law by failing to conclude that B-T as to its insured Matthews committed fraud in the application for the disability policy; (2) erred as a matter of law by failing to conclude that the insurance application contained warranties of the truth of the statements therein; (3) erred as a matter of law by concluding that Matthews and B-T complied with the terms of the insurance policy in order to justify a payout; (4) clearly erred in its calculation of prejudgment interest; (5) abused its discretion by limiting each side to three hours of trial time for presentation of its case; (6) abused its discretion by denying Provident's motion for a jury trial; and (7) abused its discretion by admitting certain expert

testimony relating to practices of insurance carriers. B-T argues in its cross-appeal that the record shows the existence of a genuine dispute as to whether Provident denied B-T's claim for benefits in bad faith.

We affirm the district court in all respects, save for the calculation of prejudgment interest.

## I. FALSE ANSWERS IN POLICY APPLICATION

Provident argues that "[a]lthough Provident conclusively established all the elements of insurance fraud under [Ohio Rev. Code] § 3923.14, the District Court misapplied the law and held that Provident failed to meet the elements of R.C. § 3923.14." Ohio R.C. § 3923.14 states:

> The falsity of any statement in the application for any policy of sickness and accident insurance shall not bar the right to recovery thereunder, or be used in evidence at any trial to recover upon such policy, unless it is clearly proved that such false statement is willfully false, that it was fraudulently made, that it materially affects either the acceptance of the risk or the hazard assumed by the insurer, that it induced the insurer to issue the policy, and that but for such false statement the policy would not have been issued.

The district court found that the insurance application in question bore questionable or incomplete answers to certain questions concerning Matthews' medical history, and that one question was not answered. At trial and on appeal Provident has challenged answers (and a failure to answer) with respect to four questions: Questions 6(c) and (d) asked if Matthews had "ever been treated for or ever had any known indication of" "emotional, mental, nervous, urinary or digestive disorder" or "high blood pressure or disease of the heart or circulatory system." Matthews answered both 6(c) and 6(d) in the negative, though he had sought treatment for chest pains, awaking at night in a cold sweat, and general anxiety and irritability. Matthews' doctor told him to stop smoking and prescribed an anti-depressant to help Matthews stop. The district court accepted Matthews'

testimony that he believed the diagnosis was that he did not have a heart condition, but only received the prescription for high stress and a smoking habit. Without finding that Matthews' answers to these two questions were false, the district court determined that the evidence did not prove Matthews gave those answers with fraudulent intent.

In response to question 9, asking whether Matthews had within the past five years received medical care, Matthews answered "yes" and listed one visit to the doctor, but omitted the visit occasioned by the chest pains discussed above. Finally, Matthews left blank question 12, which asked whether he had ever applied for insurance only to be turned down, or if any insurance policy of his had ever been modified, rated, or canceled. Matthews had in the past applied for increased insurance and been turned down.

Finding that the application was filled out by B-T's insurance broker and then later signed by Matthews, the court determined that the challenged answers were not willfully made nor fraudulently made, so as to void the policy.

We review a district court's factual findings for clear error, but we review legal conclusions *de novo*. *Lincoln Elec. Co. v. St. Paul Fire & Marine Ins. Co.*, 210 F.3d 672 (6th Cir. 2000).

Provident asserts that the court's finding that Matthews and B-T signed an insurance application containing false and incomplete answers suffices to render the application fraudulent under Ohio law. Provident argues that the district court's contrary conclusions amount to the creation of a good-faith exception to the mandate of R.C. § 3923.14. Provident cites *Buemi v. Mutual of Omaha Ins. Co.*, 524 N.E.2d 183 (Ohio App. 1987) for the proposition that a false statement on an insurance application constitutes a willful and fraudulent statement.

The Ohio courts have recognized that R.C. § 3923.14 creates a five-part test, each element of which is a factual issue on which the insurance company bears the burden of proof by clear and convincing evidence. *See, e.g., Buemi*, 524 N.E.2d at 187. The Ohio courts have not held that a false answer on a signed insurance application is, as a matter of law, both willful and fraudulent. Indeed, R.C. § 3923.14 on its face would preclude such a holding, for it declares that a false statement does not excuse the denial of benefits unless the statement was willfully made and, as a separate question, fraudulently made.

The district court determined as a factual matter that Provident did not present clear and convincing evidence that Matthews and B-T willfully and fraudulently made false statements. Provident does not argue that these factual findings are clearly erroneous. We therefore affirm the district court's factual findings and the conclusion that B-T's recovery under the insurance policy is not barred by the falsity of the statements on the application.

## II. WARRANTY

Provident argues recovery under the insurance policy is barred under Ohio common law because Matthews and B-T made a false warranty as to the truth of the statements in the insurance application. Their signed application stated, "To the best of our knowledge and belief, all of the foregoing statements . . . are true . . . . They are offered to Provident . . . as the basis for any policy issued on this Application." Provident draws our attention also to language stating that the application was part of the policy and that fraudulent misstatements in the application would void the policy.

Ohio common law recognizes a warranty defense to a claim for insurance benefits, but to constitute a warranty, a statement must clearly and explicitly state that the payment of benefits depends upon the truth of the warranted statements. *See Allstate Ins. Co. v. Boggs*, 271 N.E.2d 855, 858 (Ohio 1971). The Ohio Supreme Court has held that

> The fundamental principle is that inasmuch as policies of insurance are in the language selected by the insurer they are to be construed strictly against the insurer, and liberally in favor of the insured.
>     In other words, an insurer is bound by the provisions which he chooses to incorporate in his policy. If it is his purpose to provide that a misstatement by the insured shall render the policy void ab initio, such facts must appear clearly and unambiguously from the terms of the policy.

*Id.* at 858 (citing *Butche v. Ohio Cas. Ins. Co.*, 187 N.E.2d 20 (Ohio 1962)). The statement on the insurance application in this case does not constitute such a warranty. It does not follow from the statement Provident relies upon that if the statements on the application are false, benefits need not be paid.

### III. TOTAL DISABILITY

The insurance policy provided benefits for the purchase of shares from Matthews only in the event that Matthews became unable to work by reason of total disability. Provident argues that B-T did not meet this condition because Matthews submitted a letter of resignation.

The district court found that Matthews was totally disabled. Provident does not challenge this finding as clearly erroneous, but challenges the court's legal conclusion that the unchallenged facts meet the requirements of the contract. Provident merely argues that Matthews' submission of a resignation letter indicates that Matthews voluntarily left the job, rather than leaving as a result of

his disability.  Provident's argument is meritless.  Matthews resigned because he was totally disabled.  The voluntary act of submitting a letter of resignation in no way vitiates this reason.

## IV.  PREJUDGMENT INTEREST

Provident argues, and B-T does not deny, that prejudgment interest should be calculated as dating back only to October 31, 1995—the earliest point at which benefits became due and payable. The buy-out policy provides a twelve-month elimination period during which benefits are not available and do not accrue.  The district court found that the elimination period was from October 31, 1994 to October 31, 1995, but erroneously charged Provident with prejudgment interest dating back to the beginning of that period.  We remand for recalculation of prejudgment interest accordingly.

## V.  PROCEDURAL ERROR

We find no merit in Provident's claims of procedural error.  Provident argues that the district court abused its discretion to control the trial of the case by limiting each side to three hours for the presentation of its case.  The trial court has broad discretion to control the conduct of a trial. *Sutkiewicz v. Monroe County Sheriff*, 110 F.3d 352, 361 (6th Cir. 1997).  Provident does not show that it was prejudiced by this limitation, except to state generally that it could not examine witnesses as fully as it would have liked.  This case was tried to a judge experienced in insurance cases, and evidence was presented in unusually extensive stipulations and depositions, which did not count against either side's time at trial.  Provident has not shown that the district court abused its discretion.

Provident argues that the district court abused its discretion by denying Provident's motion for a jury trial, filed more than two years after Provident's answer to B-T's complaint. Where a timely jury demand has not been made, the trial court's decision to deny a motion for a jury trial is reviewed for abuse of discretion. *Local 783, Allied Indus. Workers of Am., AFL-CIO v. General Elec. Co.*, 471 F.2d 751 (6th Cir. 1973).

Provident explains that it did not originally request a jury trial because it believed that B-T's claim was governed by the federal Employee Retirement Income Security Act, which does not provide for jury trials. Provident's reliance on the validity of its defense was unreasonable, and we cannot say the trial court abused its discretion in denying Provident's grossly untimely motion for a jury trial.

Provident argues that the trial court abused its discretion in hearing the testimony of a professor with expertise in the insurance business, concerning certain practices of the insurance industry. Provident argues that the testimony should have been excluded under *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579 (1993). The district court, having heard Provident's objections to the admission of the professor's testimony, said it would review the professor's deposition to determine if it was reliable under *Daubert* and give the deposition testimony such weight as it deemed appropriate. The district court did not rely on the testimony of this professor in rendering judgment, and on appeal Provident does not demonstrate any prejudice that arises from the court having heard the testimony. We cannot, then, say the district court abused its discretion in reviewing the testimony of the professor.

## VI. BAD FAITH APPEAL

B-T argues that the district court erred in granting summary judgment in favor of Provident on B-T's claim for bad-faith denial of benefits. The district court found that Matthews was totally disabled by reason of an unusual psychological malady that is not part of the standard maladies identified by the medical community (and which Provident characterizes as an "addiction to work"). Under *Zoppo v. Homestead Ins. Co.*, 644 N.E.2d 397 (Ohio 1994), to prevail on a bad faith claim, an insured must show that there was no reasonable justification for the manner of handling or for the denying of the insured's claim. Summary judgment in favor of the insurer is appropriate where, viewing the evidence in the light most favorable to the insured, the claim was fairly debatable and the refusal was premised on the status of the law at the time or the facts that gave rise to the claim. *Tokles & Son, Inc. v. Midwestern Indemnity Co.*, 605 N.E.2d 936, 943 (Ohio 1992). On our review of the record, we agree with the district court that a jury could not reasonably conclude from the evidence in this case that Provident lacked a reasonable, if incorrect, basis for denying B-T's claim.

## VII. CONCLUSION

For the foregoing reasons, we affirm the district court in all respects, save for remanding for recalculation of prejudgment interest.