NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0783n.06
Filed: December 23, 2008

No. 07-4295

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

PANZIE SMITH,                              )
                                           )
    Plaintiff-Appellant,               )
                                           )
v.                                         )  ON APPEAL FROM THE UNITED
                                           )  STATES DISTRICT COURT FOR THE
                                           )  SOUTHERN DISTRICT OF OHIO
ALLSTATE INDEMNITY COMPANY,                )
                                           )
    Defendant-Appellee.                )


Before: GIBBONS and COOK, Circuit Judges; STEEH,* District Judge.


COOK, Circuit Judge. Panzie Smith sued Allstate Indemnity Company ("Allstate") for reimbursement of losses resulting from a house fire. Summary judgment proceedings and a jury verdict favored Allstate. Smith now appeals.


I.


A fire that began in the early morning, subsided, then rekindled several hours later destroyed Panzie Smith's home on May 7, 2004. Smith immediately alerted her insurer, Allstate, precipitating an investigation that same day. An Allstate agent interviewed witnesses (including Smith, her

---

*Honorable George Caram Steeh, United States District Judge for the Eastern District of Michigan, sitting by designation.

husband, and neighbors), studied the fire's origin, and assessed the damages. This process disclosed discrepancies about the cause and timing of the fire, the time the fire department arrived, and the true contents of the house. From its investigation, Allstate also learned that the Smiths had a strong financial motive to burn their home and ample opportunity. And most importantly, an outside investigator hired by Allstate determined that an intentional act caused the rekindle. Having considered all these factors, Allstate refused to pay Smith's claim, relying on policy provisions excluding: (1) losses resulting from "[i]ntentional or criminal acts of or at the direction of any insured person," and (2) "any loss or occurrence in which any insured person has concealed or misrepresented any material fact or circumstance."

Smith sued Allstate on two grounds: (1) Allstate's tortious "bad faith" refusal to indemnify her, and (2) breach of its contractual duty to cover her losses. The district court granted summary judgment for Allstate on the bad-faith claim, noting that the results of Allstate's investigation supported its refusal to pay, insulating it from any bad-faith-refusal-to-pay claim. The host of discrepancies Allstate uncovered reasonably suggested that the Smiths themselves burned their home and that their claimed losses exaggerated the burned contents and the contents' value. The court concluded that Allstate reasonably viewed the claim as "fairly debatable."

At trial, Allstate countered Smith's breach-of-contract claim with an "arson defense," claiming that the Smiths set the fire themselves. The jury rejected that defense, but nonetheless returned a verdict for Allstate on the alternate ground, finding that Smith misrepresented her claim.

We address two of Smith's challenges: (1) that the district court erred in granting summary judgment on her bad-faith claim, and (2) that the district court wrongly excluded two witnesses who Smith failed to list on the joint pretrial statement. Because we uphold these judgments confirming the absence of liability, we need not address Smith's damages-related arguments—that the court incorrectly applied judicial estoppel to cap her potential recovery and erred in its jury instruction regarding personal property damages.

II.

The "Bad Faith" Claim

On a motion for summary judgment, Ohio law directs courts to assess bad-faith-denial-of-coverage claims from the perspective of what information motivated the insurer's denial. Viewing the evidence in the light most favorable to the insured, courts ask whether "the claim was fairly debatable and the refusal was premised on either the status of the law at the time of the denial or the facts that gave rise to the claim." *Tokles & Son, Inc. v. Midwestern Indem. Co.*, 605 N.E.2d 936, 943 (Ohio 1992). An aggrieved insured must respond to the insurer's motion "with evidence which tends to show that the insurer had no reasonable justification for refusing the claim, and the insurer either had actual knowledge of that fact or intentionally failed to determine whether there was any reasonable justification . . . ." *Id.*

The district court found that Smith's claim was fairly debatable in light of the many discrepancies about the fire. "[T]here is evidence to support an arson defense," the court observed, and it determined that the record included evidence sufficient to allow Allstate to "have reasonably concluded that Plaintiff and James Smith were concealing or misrepresenting material facts and circumstances surrounding the fire." We reach the same conclusion. Allstate decided to deny coverage using the information available—especially the investigator's report and witness testimony—showing a probability that the fire resulted from the intentional act of an insured. The record is rife with inconsistent testimony and concealed matters, each of which would legitimately increase an insurer's suspicions. Allstate did not have to conclusively establish arson; it could deny coverage in good faith so long as the claim was "fairly debatable." Here, the available evidence supported Allstate's "fairly debatable" assessment.

Not only was Smith's claim fairly debatable, but she also failed to oppose Allstate's motion with evidence tending to show that Allstate lacked a reasonable justification or "intentionally failed to determine whether there was any reasonable justification." Instead, her brief merely charges that Allstate "ignor[ed] every bit of tangible evidence and focus[ed] only on bending the facts to justify the inferences of the investigator." Similarly, she complains that Allstate should have believed two witnesses who testified that Smith's husband did not start the fire. Neither of these challenges diminishes the reasonableness of Allstate's evidence-based skepticism. Smith points to *Zoppo v. Homestead Ins. Co.*, 644 N.E.2d 397, 400 (Ohio 1994), where an insurer acted in bad faith because its investigation focused almost solely on the insured while discounting evidence suggesting arson

by other individuals. Unlike Zoppo, Smith merely disagrees with the investigator's conclusion without pointing to any unfounded basis for Allstate's conclusion or some investigative omission. *Abon, Ltd v. Transcon. Ins. Co.*, articulates the difference well: in *Zoppo*, the plaintiff showed that the insurer "failed to locate key suspects, verify alibis . . . follow up with witnesses, or ask anything but cursory questions of suspects other than Zoppo." 2005-Ohio-3052, at ¶ 40 (5th Dist. App.) (granting summary judgment for an insurer because the claim was fairly debatable). Smith proffers no such evidence, leading us to conclude that Allstate reasonably believed her claim to be "fairly debatable."

Smith's appeal virtually ignores the second ground supporting summary judgment—that Allstate could fairly question whether she misrepresented her claim. The record reveals a gulf between the value of assets she claims to have lost and values listed only three-and-a-half years earlier in the Smiths' bankruptcy filing, which called for a listing of all personal property then owned by Smith and her husband. The fire, Smith claimed, destroyed $58,184.85 in personalty while her 2000 bankruptcy schedule valued personal property at only $560. With the Smiths' monthly income of $1,189, the court noted the absence of a "logical explanation for how [Smith] and her husband could have acquired the more than $40,000 in personal property they purportedly accumulated following their bankruptcy." We agree. Smith attributes the discrepancy to differences between "replacement cost" and "market value" and to gifts. But those explanations strain credulity. Whether true or not, Allstate could reasonably doubt her claim, a doubt naturally heightened when

investigators could not find any trace of certain items—an oriental carpet and oak cabinet, to name just two.

Viewing the record in the light most favorable to Smith, inconsistent witness testimony and investigators' suspicions about ignition fostered a legitimate belief that Smith's policy excluded her claim. Likewise, the property-loss claim raised serious doubt about whether she misrepresented her losses, precluding a finding of bad faith as a matter of law. *See Tokles*, 605 N.E.2d at 943. Either ground supports the district court's decision to grant summary judgment on the bad-faith claim.

Witnesses Omitted From Pretrial Statement

Smith also cites as error exclusion of two witnesses she wished to call. The court's pretrial order required both parties to disclose all potential witnesses in a joint pretrial statement, but Smith did not list the Allstate employees she later sought to present in her case in chief. Though the court enforced the order, denying Smith the right to present testimony from unlisted witnesses, it reassured her that since Allstate listed both as defense witnesses, Smith could question them on cross-examination.

We find no abuse of discretion in the court's enforcement of its pretrial order. *Jones v. Potter*, 488 F.3d 397, 411 (6th Cir. 2007). Smith cites no authority to suggest that the court abused its discretion; she does not even explain why she did not identify the witnesses as required. Moreover, the record shows that the court went to lengths to ensure that Smith would not be unduly

prejudiced. It asked whether she had other sources of evidence (she did), and even reserved the option of allowing her to call the employees as rebuttal witnesses if their testimony was essential.

## Smith's Damages Claims

We need not address Smith's damages-related claims because the jury verdict rendered them superfluous. The jury found that because Smith misrepresented her claim and thus violated the terms of the policy, Allstate need not pay Smith anything. Neither the court's judicial estoppel ruling nor the jury instruction regarding damages affected Smith's recovery.

## III.

We affirm the judgment of the district court.