**CORBO PROPERTIES, LTD, Plaintiff,**

v.

**SENECA INSURANCE COMPANY, INC., Defendant.**

**Case No. 1:09 CV 0501.**

United States District Court, N.D. Ohio, Eastern Division.

Feb. 17, 2011.

Joseph E. Rutigliano, Mayfield Heights, OH, Robert P. Rutter, Independence, OH, for Plaintiff.

Kate E. Ryan, Robert E. Chudakoff, Ulmer & Berne, Cleveland, OH, for Defendant.

## OPINION AND ORDER

CHRISTOPHER A. BOYKO, District Judge:

This matter is before the Court on the Report and Recommendation of the Magistrate Judge regarding Defendant Seneca Insurance Company, Inc.'s Motion (ECF DKT. # 63) for Partial Summary Judgment, to dismiss Plaintiff Corbo Properties, Ltd's Second Cause of Action, i.e., Lack of Good Faith in denying Plaintiff's insurance claim. After conducting a *de novo* review of the issues raised, the Court ADOPTS IN FULL the Report and Recommendation. Therefore, the Court dismisses Plaintiff's Second Claim for failure to show a genuine issue as to any material fact.

## I. Factual Background

Plaintiff owns a commercial building located at 12312 Mayfield Road, Cleveland, Ohio ("the Building"). On June 30, 2008, while the Plaintiffs were in Florida, a fire occurred at the Building. The Plaintiff reported the fire to its insurer, Defendant, and Defendant commenced an investigation. Subsequently, Defendant denied the insurance claim, believing Plaintiff caused the fire.

The Cleveland Fire Investigation Unit's ("CFIU") initial investigation indicated that the cause of the fire was unknown. Later, the report was amended, listing the cause of the fire as a lightning strike that caused an extremely high voltage surge that heated the Building's wiring and ignited the combustible wood at the origin of combustion. Defendant hired a private fire investigating company that concluded the cause of the fire was incendiary in nature, having been deliberately set with the manual application and subsequent ignition of gasoline. Additionally, the private fire investigating company considered CFIU's reported cause; and after researching lightning strikes in the area around the time of the fire and considering their own findings of burn patterns consistent with the application and ignition of fire accelerants, concluded that a lightning strike was not a viable cause.

At the time of the fire the Building was vacant, including unoccupied apartments. In the months leading up to the fire, Plaintiff had incurred significant expenses by opening a new business in a different building. Plaintiff had secured two loans amounting to nearly two-million dollars in order to fund the new business, for which the Corbos were personally liable. Additionally, the Corbos had spent several thousand dollars in personal money to fund the new business, most of which was via credit card debt.

Prior to the fire, Plaintiff had been in negotiations to sell the Building, but the deal fell through. The Corbos were going to use the proceeds of that sale to pay for one of their loans, an approximately one-million dollar, one-year promissory note that was coming due in March 2009. Defendant had a forensic accountant investigate the Corbos' financial situation. From the investigation, the accountant concluded that due to the sale of the Building falling

through and the decline in cash flow, the Corbos did not have the liquid assets to pay-off the one-million dollar note. Although various developers wanted to tear the Building down to build a hotel, at the time of the fire there were no other serious offers to purchase the Building. However, Plaintiff stood to be paid $1,426,000 from the insurance claim.

The Corbos did hope to refinance the one-million dollar, one-year loan if they were unable to pay it off in time. The loan officer who originated the loan assured them that he did not believe it would be a problem to refinance. Additionally, the Corbos were not late on any loan, credit card, or utility payment; and the business, as well as the Corbos, had good credit ratings. There was no evidence of threats to burn down the Building, and the Corbos stated that they did not know of anyone who would want to burn it down. Furthermore, there were no prior break-ins or fires at the Building, and no recent fires in the area.

The Corbos had not changed the locks on the Building since it was purchased in 1998. The Corbos, their family members, and their past and present employees had keys to the Building. Past employees returned their keys; but the Corbos could not say whether those employees had made and kept copies. The Corbos were the last identified persons in the Building and they had allowed the ADT security system to deactivate a few months prior to the fire.

There are conflicting reports as to whether the doors to the Building were locked or unlocked when the firefighters arrived to put out the fire. The report by the fire department indicated that the back doors to the Building were unlocked; but upon a subsequent interview of the participating firefighters by the Defendant, no one indicated that any door was unlocked upon their arrival to put out the fire. The

Building had no signs of forced entry, except the damage caused by the firefighters, and there were no signs of intruders.

## II. Law and Analysis

### A. Civil Rule 72(b) Standard

Pursuant to Fed.R.Civ.P. 72(b) and 28 U.S.C. § 636(b)(1)(C), the District Court shall review *de novo* any finding or recommendation of the Magistrate's Report and Recommendation that has been specifically objected to. The District Court need only review the Magistrate Judge's factual or legal conclusions that are specifically objected to by either party. *Thomas v. Arn,* 474 U.S. 140, 150, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

Local Rule 72.3(b) reads in pertinent part:

> The District Judge to whom the case was assigned shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge.

### B. Summary Judgment Standard Pursuant to Civil Rule 56(c)1

A summary judgment should be granted only if "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See, Fed.R.Civ.P. 56(c). The burden is on the moving party to conclusively show no genuine issue of material fact exists, *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Lansing Dairy, Inc.*

*v. Espy*, 39 F.3d 1339, 1347 (6th Cir.1994); and the court must view the facts and all inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Lansing Dairy*, 39 F.3d at 1347. This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact. *Betkerur v. Aultman Hospital Ass'n.*, 78 F.3d 1079, 1087 (6th Cir.1996); *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404–06 (6th Cir.1992). The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir.2003) (quoting *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505).

### III. The Recommendation of the Magistrate Judge

#### A. Standard for Determining Lack of Good Faith

▉ The Magistrate Judge correctly states the standard for determining lack of good faith, i.e., "reasonable justification."

*Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552, 644 N.E.2d 397 (1994). The Magistrate Judge correctly explains that an "arbitrary and capricious" denial is not reasonably justified; but a claim that is "fairly debatable" would be reasonably justified. "An insurer may be reasonably justified in denying an insured's claim for fire damage when there is sufficient evidence that the insured committed arson to obtain the claim proceeds." *Zoppo* at 555, 644 N.E.2d 397. Therefore, if the question of the cause of the fire is "fairly debatable," the defendant, relying on sufficient evidence of arson, is reasonably justified in denying the insurance claim. So long as the evidence is sufficient, the denial is not "arbitrary and capricious."

The use of "fairly debatable" or "arbitrary and capricious" are merely different ways of explaining and expressing the standard of "reasonable justification." In *Marsteller v. Security of Am. Life Ins. Co.*, 2002 WL 31086111, *4–5, 2002 U.S. Dist. Lexis 17560, *13–14 (N.D.Ohio Sept. 12, 2002), Judge Carr explains that the "fairly debatable" test is intended to provide guidance when applying the "reasonable justification" standard:

> Under Ohio law, "where a claim is fairly debatable the insurer is entitled to refuse the claim as long as such refusal is premised on a genuine dispute over either the status of the law at the time of the denial or the facts giving rise to the claim." *Motorists Mut. Ins. Co. v. Said*, 63 Ohio St.3d 690, 590 N.E.2d 1228 (1992). To grant a motion for summary judgment brought by an insurer on the issue of whether it lacked good faith in the satisfaction of an insured's claim, a court must find, after viewing the evidence in a light most favorable to the insured, that the claim was fairly debatable and the refusal was premised on either the status of the law at the time of the denial or the facts that gave rise

to the claim. *Tokles & Son*, 65 Ohio St.3d at 630 [605 N.E.2d 936].

Additionally, Plaintiff asserts that the Magistrate Judge relied on cases that were overruled by *Zoppo*, specifically *Tokles & Son, Inc. v. Midwestern Indem. Co.*, 65 Ohio St.3d 621, 605 N.E.2d 936 (1992). *Tokles* used the "fairly debatable" test to determine what was "reasonably justified" in the bad faith context. *Id.* Since *Zoppo*, state and federal courts across Ohio, including this Court, have repeatedly applied the "fairly debatable" test and have continued to cite *Tokles* in deciding bad faith claims, with many involving summary judgment motions. See, *Werner v. Progressive Preferred Ins. Co.*, 310 Fed. Appx. 766, 769 (6th Cir.2009); *Smith v. Allstate Indem. Co.*, 304 Fed. Appx. 430, 432 (6th Cir.2008); *B–T Dissolution, Inc. v. Provident Life and Accident Ins. Co.*, 123 Fed. Appx. 159, 164 (6th Cir.2004); *Hartman v. Conseco Senior Health Ins. Co.*, 2010 WL 1981014, *8, 2010 U.S. Dist. LEXIS 48725, *21 (S.D.Ohio May 18, 2010); *Collins v. National Union Fire Ins. of Pittsburgh, PA., Inc.*, 2009 WL 2145910, *2–3, 2009 U.S. Dist. LEXIS 60587, *5–7 (S.D.Ohio July 13, 2009); *Turner v. Liberty Mut. Fire Ins. Co.*, 2007 WL 2428035, *6, 2007 U.S. Dist. LEXIS 61360, *15 (N.D.Ohio Aug. 21, 2007); *Ullman v. Auto–Owners Mut. Ins. Co.*, 502 F.Supp.2d 737, 747 (S.D.Ohio 2007); *Fair v. State Farm Fire and Cas. Co.*, 426 F.Supp.2d 672, 678 (N.D.Ohio 2006); *Vogias v. Ohio Farmers Ins. Co.*, 177 Ohio App.3d 391, ¶ 39–41, 894 N.E.2d 1265 (11th Dist.2008); *Garrett v. Ohio Farmers Ins. Co.*, 2005–Ohio–413, ¶ 16, 2005 WL 280831, 2005 Ohio App. LEXIS 358 (11th Dist. Feb. 4, 2005); *La Plas Condo. Ass'n v. Utica Nat'l Ins. Group*, 2004–Ohio–5347, 2004 WL 2260099, 2004 Ohio App. LEXIS 4873 (3d Dist. Oct. 4, 2004); *Morland v. Allstate Ins. Co.*, 2000 WL 184600, 2000 Ohio App. LEXIS 511 (7th Dist. Feb. 3, 2000).

*Zoppo* did not mention *Tokles* and did not overrule it as the Plaintiff suggests. Although some courts have said that *Zoppo* overruled *Tokles*, those courts have made it clear that *Tokles* was only overruled for its application of the "intent" requirement set forth in *Motorists Mut. Ins. Co. v. Said*, 63 Ohio St.3d 690, 590 N.E.2d 1228 (1992), not the application of the "fairly debatable" test. See, *Maxey v. State Farm Fire and Cas. Co.*, 689 F.Supp.2d 946, 953 (S.D.Ohio 2010); *TMD, Inc. v. Hasting Mut. Ins. Co.*, 2007 WL 1115203, 2007 U.S. Dist. LEXIS 27634 (N.D.Ohio Apr. 13, 2007); *Mayle v. Allstate Indem. Co.*, 2007 WL 437887, *3, 2007 U.S. Dist. LEXIS 8544, *8–9 (N.D.Ohio Feb. 6, 2007); *American Family Ins. Co. v. Taylor*, 2010–Ohio–2756, ¶ 48, 2010 WL 2414091, 2010 Ohio App. LEXIS 2278 (5th Dist. June 16, 2010); *Abon, Ltd. v. Transcontinental Ins. Co.*, 2005–Ohio–3052, ¶ 45, 2005 WL 1414486, 2005 Ohio App. LEXIS 2847 (5th Dist. June 16, 2005). All of the above mentioned cases used the "fairly debatable" test to assist in determining whether the insurance company was reasonably justified in denying the claim.

Based upon the evidence used by Defendant, it had reasonable justification for denying the insurance claim on the basis of arson. The elements of arson are (1) a fire of incendiary origin; (2) motive to cause the fire; (3) opportunity to cause, or participate in causing, the fire. See, *Caserta v. Allstate Ins. Co.*, 14 Ohio App.3d 167, 169, 470 N.E.2d 430, 433 (1983); *Thomas v. Allstate Ins. Co.*, 974 F.2d 706, 711 (6th Cir.1992). Defendant relied on a report prepared by an independent fire investigation firm which concluded that the cause of the fire was incendiary based upon fire debris samples and low level burn patterns. The independent firm also entertained the cause found by the CFIU

and reported to the Defendant that the CFIU's possible cause of the fire was not viable.

Next, Defendant relied on the report by an independent forensic accountant to determine the Corbos had motive. The report concluded that in the months leading up to the fire, the Corbos had experienced a decreased cash flow, due to opening a new business. Further, at the time of the fire, they lacked sufficient funds to cover a one-year loan that was due in March 2009, which was taken out to finance the new business. In addition, there were no significant offers on the Building, with the most recent deal falling through shortly before the fire. The Corbos could not identify anyone else who would have any reason to set the Building on fire.

Lastly, Defendant relied on interviews by the independent fire investigator of the fire fighters that responded to the fire, and the testimony of the Plaintiffs as to any possible opportunity to cause the fire. None of the firefighters who were interviewed could recall ever finding any of the doors open or unsecured in responding to the fire. There were no signs of forced entry or other signs of a break-in by an unknown arsonist. The Corbos had recently disabled the ADT security system, and they were the last confirmed persons in the Building. The issuance of keys to the Building was restricted to the Corbos, their family members, and current employees.

Defendant could reasonably conclude that the fire was incendiary in origin. Although Plaintiff has adduced sufficient evidence to raise a jury issue regarding whether the damage to the Building was a loss covered by its insurance policy, the test is not if the denial was correct, but whether the denial was "arbitrary and capricious", and whether there existed a reasonable justification for the denial. *Thomas*, 974 F.2d at 711. For the reasons set forth above, Defendant was reasonably justified in denying the insurance claim.

### B. Construing the Evidence Under the Summary Judgment Standard

The Magistrate Judge correctly construed the evidence under the summary judgment standard. Here, Plaintiff attempts to blur the lines between a breach of contract claim (i.e., the arson defense) and a bad faith claim on denying an insurance claim. Numerous decisions in this district have recognized that summary judgment cannot be avoided on a bad faith claim by arguing the merits of the breach of contract claim. See, e.g., *Foley v. State Farm Fire & Cas. Co.*, No. 4:90–CV–1687, slip op. (N.D.Ohio 1991) (Dowd, J.); *Thomas v. Allstate Ins. Co.*, No. 1:96–CV–1529, slip op. (N.D.Ohio Aug. 15, 1997) (O'Malley, J.); and *Mayle v. Allstate Indem. Co.*, 2007 WL 437887, 2007 U.S. Dist. LEXIS 8544 (N.D.Ohio Feb. 6, 2007) (Adams, J.).

In each of the above cases, the Court distinguished between the breach of contract claim, where the disputed weight or probative value to be given conflicting evidence may create a fact question, and the claim of bad faith, where summary judgment can be found if there is evidence that makes the insurance company's position at least fairly debatable. Therefore, the Magistrate Judge was correct to recognize the existence of evidence that Defendant considered in denying the coverage for this claim, as well as dismissing the notion that the weight of the evidence was of importance. The evidence used by Defendant to deny Plaintiff's insurance claim cannot be ignored, and in fact, must be looked at to determine if Defendant had a reasonable justification for denial.

Under the summary judgment standard, only disputed facts are viewed in favor of the nonmovant. "At the summary judgment stage, facts must be viewed in the

light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris,* 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). To view the facts in the light most favorable to the nonmoving party "means no more than that 'the party opposing a summary judgment motion is to be given the benefit of all reasonable doubts and inferences in determining whether a genuine issue exists that justifies proceeding to trial.'" *Agosto v. INS,* 436 U.S. 748, 772, 98 S.Ct. 2081, 56 L.Ed.2d 677 (1978).

None of the facts, as characterized by the Magistrate Judge, are in dispute. Plaintiff cannot deny, nor does Plaintiff dispute, the facts presented by Defendant in support of its motion. Defendant hired a private fire investigating company that determined the fire to be incendiary in nature. The investigating company considered the CFIU's determined cause and dismissed it as not viable. Defendant also hired a forensic accountant, who reported that prior to the fire, the Corbos had experienced a significant decline in cash flow, which they do not deny. Nor do they deny that the sale of the Building, the proceeds of which were to be used to pay a one-million dollar note coming due, had recently fallen through with no other significant buyers in the picture.

The above facts must be considered in order to determine if Defendant had a reasonable justification for denying Plaintiff's insurance claim. Therefore, Plaintiff's assertion that these facts are to be construed in their favor, by disregarding the information used by Defendant, and instead, adopting the facts asserted by Plaintiff, is an incorrect statement of the law.

Plaintiff's evidence, controverting Defendant's evidence, and creating an issue which may defeat an arson claim, is irrelevant to the inquiry at hand. Here, the inquiry is whether Defendant had suffi-cient information to reasonably conclude that the Corbos set or participated in setting fire to the Building to obtain insurance proceeds. Therefore, Defendant's evidence cannot be ignored, in order to construe the evidence in Plaintiff's favor, as Plaintiff suggests. In order to determine if Defendant acted in good faith in denying the insurance claim, the information Defendant used in order to make the determination must be examined by the Court, even if the insurance company is the moving party on summary judgment.

### C. Characterization of the Facts

The Magistrate Judge correctly characterized the facts as to: 1) the CFIU's opinion of the cause of the fire; and 2) what Plaintiff stood to "gain" by collecting on the insurance claim.

The Magistrate Judge correctly stated the opinion by the CFIU as to the cause of the fire, although Plaintiff asserts otherwise. The Magistrate Judge's statement about the cause of the fire, as opined by the CFIU, came directly from the CFIU Report of Investigation. (Docket # 65–21, p. 82 of 91, Page ID 2059). Plaintiff points to deposition testimony of another investigator, who did not write the report and was not lead investigator, in order to cite a different cause for the fire. But, the fact that two CFIU investigators differed as to the cause only supports the Magistrate Judge's decision that the cause of the fire was fairly debatable; and Defendant had a reasonable justification to believe the Corbos caused the fire.

The Corbos may not have stood to "gain" $1,426,000, as it was characterized, from the insurance claim. But they did stand to receive $1,426,000 if the claim was accepted. Their current financial position; the fact that the Building had no current purchasers and was vacant; and a $950,000 note coming due in March, all

support the Magistrate Judge's assessment that the Corbos stood to "gain" from the destruction of the Building.

### D. Report by the Bad Faith Expert Irrelevant

The Magistrate Judge correctly found the report to be irrelevant because the expert opinion offered by Plaintiff did not provide sufficient evidence to create a genuine issue of material fact to overcome summary judgment. The expert made the same mistake as Plaintiff, and attempted to save the bad faith claim by arguing the merits of the breach of contract claim. The report reasoned that Defendant did not act in good faith because the evidence relied on in the denial was insufficient to prevail on an arson defense to a breach of contract claim. This finding in the expert report is irrelevant to the inquiry at hand, which is only whether Defendant had sufficient information to reasonably conclude that the Corbos set or participated in setting fire to the Building to obtain insurance proceeds. Therefore, the report does not create a genuine issue of material fact regarding whether Defendant lacked good faith in denying Plaintiff's claim, and as such, does not preclude summary judgment.

### E. Claim for Punitive Damages and Attorney Fees

■ Plaintiff seeks punitive damages and attorney fees in relation to its claim of Defendant's lack of good faith. The availability of punitive damages, however, is predicated upon a showing of a lack of good faith. See *Helmick v. Republic–Franklin Ins. Co.*, 39 Ohio St.3d 71, 529 N.E.2d 464 (1988); *Thomas*, 974 F.2d at 712 n. 6 ("Because no bad faith was shown, Thomas' [sic] claim for punitive damages was properly denied."). Because Plaintiff's claim for Lack of Good Faith cannot be sustained, its prayer for punitive damages and attorney fees, as relates to that

claim, lacks merit. See *id.*, 529 N.E.2d at 468; *Thomas*, 974 F.2d at 712 n. 6.

## IV. CONCLUSION

For the foregoing reasons, the Court ACCEPTS the Magistrate Judge's Report and Recommendation, and grants Defendant's Motion for Partial Summary Judgment dismissing Plaintiff's Second Claim for Lack of Good Faith.

**IT IS SO ORDERED.**

## REPORT AND RECOMMENDATION
### Doc. No. 63

NANCY A. VECCHIARELLI, United States Magistrate Judge.

This case is before the Magistrate Judge on referral. (*Doc. No. 37.*) Plaintiff, Corbo Properties, Ltd. ("Corbo Properties"), filed this lawsuit against Defendant, Seneca Insurance Company, Inc. ("Seneca"), to recover insurance proceeds for a fire loss to Corbo Properties' commercial building. The Complaint alleges two causes of action: breach of insurance contract, and lack of good faith in denying Corbo Properties' insurance claim. Before the Court is Seneca's Motion for Partial Summary Judgment, which seeks to dismiss Corbo Properties' second cause of action regarding Lack of Good Faith and corresponding requests for punitive damages and attorney fees. (*Doc. No. 63.*) Corbo Properties opposes Seneca's Motion. (*Doc. No. 66.*) For the following reasons, Seneca's Motion should be GRANTED.

### I. BACKGROUND

The following material facts are not in dispute. Corbo Properties is co-owned by Joseph Corbo and his mother, Grace Corbo. Grace Corbo, however, has had little involvement in the company, and Joseph's wife, Selena Corbo, has been involved in managing it.

On June 30, 2008, while the Corbos were in Florida, a fire occurred at a vacant commercial building owned by Corbo Properties and located at 12312 Mayfield Road, Cleveland, Ohio ("the Building"). Corbo Properties reported its fire loss to its insurer, Seneca, and Seneca commenced an investigation. Seneca subsequently denied Corbo Properties' insurance claim because it believed the Corbos caused the fire to obtain the insurance proceeds.

The Cleveland Fire Investigation Unit ("CFIU") initially indicated that the cause of the fire was unknown. It later amended its finding and concluded that the fire was caused by a lightning strike that caused an extremely high voltage surge that heated the Building's wiring and ignited the combustible wood at the origin of combustion. Seneca hired a private fire investigating company that examined the scene of the fire and concluded the fire was incendiary in nature, having been deliberately set with the manual application and subsequent ignition of gasoline. The private investigators considered the fire department's conclusion that lightning caused the fire, but after researching lightning strikes in the area around the time of the fire, and after considering their findings of burn patterns consistent with the application and ignition of fire accelerants, the private investigators concluded that lightning was not a viable cause.[1]

No businesses were operating in the Building at the time of the fire. Although there were apartments in the Building, they were unoccupied. In the months leading up to the fire, the Corbos incurred significant expenses by opening a new business in a different building. They paid for the new business by taking out two loans amounting to nearly two-million dollars, for which the Corbos were personally liable, and by spending several hundred thousand dollars in personal money, much of which was obtained via credit card debt.

The Corbos had been in negotiations to sell the Building but the deal fell through. Proceeds from the sale of the Building were intended to pay for one of their loans, an approximately one-million dollar, one-year promissory note that was to become due in March 2009. Seneca's forensic accountant concluded that, in light of a significant decline in the Corbos' cash flow in the months leading up to the fire and absent proceeds from the sale of the Building, the Corbos did not have the liquid assets required to pay off the one-million dollar note. Although various developers wanted to tear the Building down to build a hotel, the Corbos had no other serious offers to purchase the Building at the time of the fire. However, Corbo Properties stood to gain $1,426,000 from its insurance claim.[2]

The Corbos hoped to refinance their one million dollar, one-year loan if they were unable to pay it off in time. The loan officer who originated the loan told the Corbos he did not believe it would be a problem to refinance it. Moreover, the Corbos were not late on any loan, credit card, or utility payments, and they and their business had good credit ratings. Still, there was no evidence of threats from others to burn down the Building, and the

---

1. Corbo Properties notes that the expert report did not indicate the presence of any timing devises or trailers of accelerant by which the fire could be started from off site or at a safe distance. However, this is of little consequence because the thrust of Seneca's position is that the Corbos had someone else set the fire on their behalf.

2. Seneca notes that the Corbos had collected on two fire damage insurance claims in the past. If this evidence is admissible, it is of little or no probative value as there is no evidence these were fraudulent claims. The prior claims only demonstrate that the Corbos knew how to process insurance claims.

Corbos stated that they did not know of anyone who would want to burn it down. Furthermore, there were no prior break-ins or fires at the Building, and no recent fires in the area.

The Corbos had not changed the locks on the Building since they bought it in 1998. The Corbos stated that they, their family members, and their past and present employees had keys to the Building. Past employees returned their keys to the Corbos, but the Corbos could not say whether those employees had made and kept copies.

It is not clear whether the doors to the Building were locked or unlocked at the time the firefighters arrived at the Building to put out the fire. Although the fire department's report indicated that the back doors to the Building were unlocked when the firefighters arrived, the firefighters whom Seneca's private investigators later interviewed indicated that the doors were locked. There were no signs of forced entry into the Building other than by the fire department, and there were no signs of intruders because the Corbos had allowed the Building's ADT security system to be deactivated a few months before the fire.[3]

## II. LAW & ANALYSIS

### A. Summary Judgment Standard of Review

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Fed. R.Civ.P.* 56. The moving party can meet this burden in two ways: by presenting sufficient evidence to indicate there is no genuine issue of material fact; or by arguing that the nonmoving party, after adequate time for discovery, fails to show sufficient evidence to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial. *See Cox v. Ky. Dep't of Transp.,* 53 F.3d 146, 149 (6th Cir.1995).

In reviewing summary judgment motions, a court must view the evidence in a light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Pachla v. Saunders Sys., Inc.,* 899 F.2d 496, 498 (6th Cir.1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [nonmoving party] is entitled to a verdict." *Id.* at 252, 106 S.Ct. 2505.

In addition, the Court does not weigh the evidence or make credibility determinations. *Joostberns v. United Parcel Services, Inc.,* 166 Fed.Appx. 783, 787 (6th Cir.2006). However, the mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient; there must be evidence on which the jury could reasonably find for the non-

---

**3.** Joseph Corbo had last been in the Building three days before the fire. Neither party has submitted evidence identifying anyone in the Building after that time.

moving party. *Anderson,* 477 U.S. at 248–49, 106 S.Ct. 2505. In other words, the court should determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Id.* at 251, 106 S.Ct. 2505.

## B. Corbo Properties' Claim for Lack of Good Faith.

A federal court sitting in diversity must apply the substantive law of the forum state. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Talley v. State Farm Fire & Cas. Co.,* 223 F.3d 323, 326 (6th Cir.2000). In Ohio, an insurer has a duty to act in good faith when handling the claims of its insured. *Hoskins v. Aetna Life Ins. Co.,* 6 Ohio St.3d 272, 276, 452 N.E.2d 1315, 1319 (1983). A bad faith refusal to settle an insurance claim is a breach of that duty and imposes tort liability. *Id.* at 276, 452 N.E.2d at 1320.

An insurer fails to exercise good faith in processing an insurance claim when "its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor." *Zoppo v. Homestead Ins. Co.,* 71 Ohio St.3d 552, 554, 644 N.E.2d 397, 400 (1994); *Rose v. Hartford Underwriters Ins. Co.,* 203 F.3d 417, 421 (6th Cir.2000). Denial of a claim is not reasonably justified when it is done arbitrarily and capriciously. *See Hoskins,* 6 Ohio St.3d at 277, 452 N.E.2d at 1320; *Thomas v. Allstate Ins. Co.,* 974 F.2d 706, 711 (6th Cir.1992). However, denial of a claim may be reasonably justified when "the claim was fairly debatable and the refusal was premised on either the status

of the law at the time of the denial or the facts that gave rise to the claim." *Tokles & Son v. Midwestern Indemn. Co.,* 65 Ohio St.3d 621, 630, 605 N.E.2d 936, 943 (1992); *Maxey v. State Farm Fire & Cas. Co.,* 689 F.Supp.2d 946, 953 (S.D.Ohio 2010). "The test, therefore, is not whether the defendant's conclusion to deny benefits was correct, but whether the decision to deny benefits was arbitrary or capricious, and there existed a reasonable justification for the denial." *Thomas,* 974 F.2d at 711.[4]

An insurer may be reasonably justified in denying an insured's claim for fire damage when there is sufficient evidence that the insured committed arson to obtain the claim proceeds. *See Zoppo,* 71 Ohio St.3d at 555, 644 N.E.2d at 400; *Thomas,* 974 F.2d at 711–12. The elements of arson are (1) a fire of incendiary origin; (2) motive to cause the fire; and (3) opportunity to cause, or participate in causing, the fire. *See Caserta v. Allstate Ins. Co.,* 14 Ohio App.3d 167, 169, 470 N.E.2d 430, 433 (1983); *Thomas,* 974 F.2d at 711. Circumstantial evidence is sufficient to reasonably conclude that an insured committed arson to collect on an insurance policy; however, there still must be sufficient evidence of all three elements of arson. *See Caserta,* 14 Ohio App.3d at 171, 470 N.E.2d at 435; *Randle v. Allstate Indemn. Co.,* 649 F.Supp.2d 675, 678 (N.D.Ohio 2009).

Here, Corbo Properties offers evidence tending to controvert the evidence upon which Seneca relied to deny Corbo Properties' claim. Corbo Properties also argues that, had Seneca performed a more extensive investigation, Seneca would have discovered strong exculpatory evidence and suggests that, perhaps, Seneca purposely

---

4. Some Ohio courts have found the denial of insurance claims "fairly debatable" when a jury could find in favor of the insurer's arson defense to a breach-of-contract claim. *See, e.g., Abon, Ltd., et al. v. Transcontinental Ins. Co.,* No. 2004–CA–0029, 2005 WL 1414486, at

*7 (Ohio Ct.App. 5th Dist. June 16, 2005) ("We agree ... that evidence that creates an issue of fact on an arson defense is sufficient, so long as it is not fraudulent, to create the reasonable justification to defeat a bad faith claim.").

chose not to pursue its investigation further so that it could rely on the evidence most beneficial to itself.

There is no question that Corbo Properties has adduced sufficient evidence to raise a jury issue regarding whether the damage to the Building was a loss covered by its insurance policy. A reasonable jury could determine that Seneca's denial of benefits was incorrect. However, the test is not whether Seneca's denial of benefits was correct, but whether Seneca's denial was arbitrary and capricious, and whether there existed a reasonable justification for the denial. *See Thomas,* 974 F.2d at 711. In this case, for the reasons set forth below, no reasonable jury could conclude that Seneca's decision to deny coverage was arbitrary and capricious. After viewing the evidence in a light most favorable to Corbo Properties, Corbo Properties' insurance claim was, and remains, fairly debatable.

Seneca could reasonably conclude that the fire was incendiary in origin. Although Corbo Properties argues that Seneca's private fire investigators' report was deficient, there is no evidence that the report was fraudulent or otherwise unreliable when Seneca considered it as a basis for denying Corbo Properties' claim. *Compare Helmick v. Republic–Franklin Ins. Co.,* 39 Ohio St.3d 71, 75, 529 N.E.2d 464, 468 (1988) (finding reasonable justification when the evidence included a report by the insurer's private fire investigator that concluded the fire was incendiary and furthered with gasoline), *with Turner v. Liberty Mutual Fire Ins. Co.,* No. 4:07–cv–163, 2007 WL 2428035, at *4–7 (N.D.Ohio Aug. 21, 2007) (finding lack of reasonable justification when the insurer relied on a report from its private fire investigator indicating the fire was incendiary and involved an accelerant, but the expert had not performed an on-site investigation and had not signed the report).

Seneca could reasonably conclude that the Corbos had motive to set the fire. Although the Corbos provide evidence that their loan could have been renegotiated, the undisputed facts show that the Corbos had significant financial obligations for which it appeared, through the analysis of a forensic accountant, they would have significant difficulty managing. Moreover, the Building was of little to no use to the Corbos and the Corbos stood to benefit from the destruction of the Building. The existence of countervailing evidence of motive does not make reliance on those facts showing financial distress arbitrary and capricious. The evidence allows for the reasonable inference that the Corbos had a financial motive to burn down the Building. *See Randle,* 649 F.Supp.2d at 679 (finding reasonable justification when the evidence included a financial motive based on the analysis of a forensic accounting firm); *Thomas,* 974 F.2d at 711 (explaining that the test for reasonable justification is not whether the insurer was correct in its belief its insured committed arson, but whether denial of the insured's claim was arbitrary and capricious, and whether it was based on a reasonable justification).

And Seneca could reasonably conclude that the Corbos at least participated in causing the fire. The Corbos stated that many people within their social circle had keys to the Building, but the Corbos also stated that all past employees left their employment on good terms, that there were no threats from others to burn down the Building, and that they did not know of anyone who would want to burn down the Building. Moreover, the Corbos allowed their ADT security system in the Building to be deactivated only a few months before the fire. Although there was conflicting evidence of whether the back doors to the Building were locked when the fire department arrived, and no evidence that the Corbos had the opportunity to set the fire

personally, there was still sufficient circumstantial evidence to reasonably conclude that the Corbos had some control over access to the building and obtained the services of another to set the fire. *See Gregory's Continental Coiffures & Boutique, Inc. v. St. Paul Fire & Marine Ins. Co.*, 536 F.2d 1187, 1189 (7th Cir.1976) (finding sufficient evidence that the insured caused or participated in causing the fire when only the insured and two employees had keys to the building, and there was no evidence that the employees had motive to set the fire); *accord Mayle v. Allstate Indemn. Co.*, No. 5:06–cv–1907, 2007 WL 437887, at *3–4, 2007 U.S. Dist. LEXIS 8544, at *10–12 (N.D.Ohio Feb. 6, 2007) (citing *Caserta*, 14 Ohio App.3d at 171, 470 N.E.2d at 433) (finding reasonable justification despite the lack of evidence that the insured had exclusive opportunity to set the fire himself). *See also Abon*, 2005 WL 1414486, at *6–7 (including as relevant evidence of opportunity the fact that the alarm system in the building was not set on the night of the fire).

Corbo Properties relies on three cases to argue that it has created a genuine issue of material fact to overcome summary judgment. It cites *Zoppo v. Homestead Insurance Company* to argue that Seneca's investigation was inadequate because Seneca failed to interview those whom the Corbos stated had keys to the Building, and that the inadequacy serves as conclusive evidence of bad faith. In *Zoppo*, the insurer failed to investigate others who might have set the fire at issue despite evidence that the others had threatened to burn down the building, admitted to having attempted to burn down the building, and admitted to setting the fire after the building burned down. *Zoppo*, 71 Ohio St.3d at 555, 644 N.E.2d at 400. Corbo Properties concludes that, because it presented evidence of Seneca's lack of investigation, there is a genuine issue of material fact to overcome summary judgment. Corbo Properties' argument is not persuasive, however, because *Zoppo* is distinguishable.

In contrast to the extraordinary evidence of third parties who likely started the fire in *Zoppo*, the Corbos stated that they did not know of anyone who threatened or otherwise had motive to burn down the Building. With no leads on who else might have burned down the Building, it was not irrational for Seneca to conclude, based on the Corbos statements, that such interviews would be unnecessary.

Corbo Properties cites *Wagner v. Midwestern Indemnity Company* to argue that Ohio courts have found a genuine issue of material fact regarding lack of good faith upon a showing of less exculpatory evidence than that presented here. In *Wagner*, the insured cooperated with the insurer's fire investigators, there was evidence that the fire was caused by accident, and the insurer waited nearly a full year after its physical investigation had been completed before denying the insured's claim. *Wagner v. Midwestern Indemn. Co.*, 83 Ohio St.3d 287, 294, 699 N.E.2d 507, 513 (1998). The *Wagner* court determined that the record demonstrated sufficient evidence to create a jury question on the issue of bad faith. *Id.*, 699 N.E.2d at 513. Corbo Properties concludes that, because it presents more exculpatory evidence than in *Wagner*, there is a genuine issue of material fact to overcome summary judgment. Corbo Properties' argument is not persuasive, however, because *Wagner* is distinguishable.

First, the factual analysis in *Wagner* is cursory and, therefore, not helpful for evaluating a claim for lack of good faith. Although evidence of an insured's cooperation, and a non-incendiary cause of fire, is relevant to the question of whether an insured lacked good faith in denying a claim, the *Wagner* court indicated that these facts were only *some* of the evidence

that it considered. *Id.,* 699 N.E.2d at 513. Unfortunately, the court provided no explanation of the evidence that the insurer considered in making its decision to deny the insured's claim. *See id.,* 699 N.E.2d at 513. Absent that information, *Wagner* does not provide guidance for determining whether an insurer acted in good faith. Second, the most significant fact in *Wagner* suggesting the insurer acted without good faith is that the insurer waited for nearly a year after its physical investigation before denying the insured's claim. *Id.,* 699 N.E.2d at 513. Here, Corbo Properties makes no such argument and presents no such evidence.

And Corbo Properties cites to *Turner v. Liberty Mutual Fire Insurance Company,* a case decided by this Court wherein an insurer's motion for summary judgment was denied, to argue that Seneca's Motion should be denied as well because this case shares similar facts. In *Turner,* the Court found that the insurer failed to dispel genuine issues of material fact regarding lack of good faith because the insurer relied almost entirely on a baseless, conclusory, and unsigned expert report indicating that the cause of the fire was incendiary while ignoring reports from the fire department; the insured presented evidence of financial well-being; there was no direct evidence that the insured set the fire; and the only circumstantial evidence that the insured had the opportunity to set the fire was tire tracks in the snow that no investigator conclusively traced. *Turner,* 2007 WL 2428035, at *7–8. Corbo Properties concludes that, because it has presented conflicting evidence of cause, motive, and opportunity, it too has established a genuine issue of material fact to overcome summary judgment. The Court is not persuaded, however, because *Turner* is distinguishable.

The Court in *Turner* indicated that the insured relied almost entirely on its expert report of the cause of the fire. *Id.* at *8. That report was fatally flawed, however, because the expert never investigated the scene of the fire in person, made conclusory findings, and failed to sign the report. *Id.* at *4, 7–8. Here, there is no such flawed expert report. Moreover, while in *Turner* the insurer ignored the findings of the fire department, here the private fire investigators considered the fire department's conclusion that the fire was caused by lightning, researched lightning strikes in the area around the time of the fire, and ultimately dismissed lighting as a viable cause based upon a reasonable analysis. Unlike the insurer in *Turner,* Seneca has presented sufficient evidence of the cause of the fire, upon which it was reasonable to conclude that the fire was incendiary.

Finally, Corbo Properties offers an expert report concluding that Seneca denied Corbo Properties' claim in bad faith and argues that this report provides sufficient evidence to create a genuine issue of material fact to overcome summary judgment. This expert report does not, however, avail Corbo Properties in overcoming summary judgment. The expert report concludes that Seneca lacked good faith because there is evidence that tends to controvert Seneca's evidence, and because Seneca's evidence is insufficient to prevail on an arson defense to a breach of contract claim at trial. These findings are irrelevant to the inquiry here, which is only whether Seneca had sufficient information to reasonably conclude that the Corbos set or participated in setting fire to the Building to obtain insurance proceeds. Therefore, the expert report does not create a genuine issue of material fact regarding whether Seneca lacked good faith in denying Corbo Properties' claim.[5]

---

**5.** There is considerable doubt as to whether this report is admissible on the ultimate conclusion, that is, on the ultimate issue of whether Seneca acted in bad faith.

In sum, the Court concludes that, based on the undisputed facts and as a matter of law, no reasonable jury could find in favor of Corbo Properties on its claim that Seneca lacked good faith in denying its insurance claim. Accordingly, Seneca's Motion for Partial summary Judgment should be granted.

## C. Punitive Damages and Attorney Fees.

Corbo Properties seeks punitive damages and attorney fees in relation to its claim of Seneca's lack of good faith. The availability of punitive damages, however, is predicated upon a showing of a lack of good faith. *See Helmick,* 39 Ohio St.3d at 75, 529 N.E.2d at 468; *Thomas,* 974 F.2d at 712 n. 6 ("Because no bad faith was shown, Thomas' [sic] claim for punitive damages was properly denied."). Because Corbo Properties' claim for Lack of Good Faith should be dismissed, its prayers for punitive damages and attorney fees as they relate to that claim lack merit. *See id.,* 529 N.E.2d at 468; *Thomas,* 974 F.2d at 712 n. 6.

## III. CONCLUSION

For the foregoing reasons, Seneca's Motion for Partial Summary Judgment should be GRANTED.